**Robert H. MORAST, Plaintiff-Appellant,**

v.

**T. Bertram LANCE, et al.,
Defendants-Appellees.**

No. 86-8333.

United States Court of Appeals,
Eleventh Circuit.

January 14, 1987.

David G. Archer, Cartersville, Ga., for Robert B. Morast.

Anthony L. Cochran, Chilivis & Grindler, Atlanta, Ga., for T. Bertram Lance & Kris Corp.

Nickolas P. Chilivis, Edmund M. Kneisel, Kilpatrick & Cody, Atlanta, Ga., for Calhoun First Nat'l.

Charles M. Williams, Calhoun, Ga., for Thomas B. Lance, Jr.

Groze Murphy, Jr., Jones & Murphy, Calhoun, Ga., for David J. Lance, Clifford Booker & NW GA Computer.

T. Joseph Campbell, Calhoun, Ga., for Tom B. David & Dean D. Hayes.

William P. Bailey, Bailey & Bearden, J. Lane Bearden, Calhoun, Ga., for C.E. Harris, Jack Holldand, P.J. Whittemore.

David K. Smith, Chance & Maddox, Ronald F. Chance, Sr., J.C. Maddox, Calhoun, Ga., for J.C. Maddox and Desmond Cummings.

Before GODBOLD and VANCE, Circuit Judges, and SWYGERT *, Senior Circuit Judge.

GODBOLD, Circuit Judge:

Robert Morast filed this action against Calhoun First National Bank alleging that he was wrongfully fired from his position at the bank in violation of his constitutional rights, his rights under federal civil rights statutes, his rights under the National Banking Act, his rights under federal and state RICO statutes, and public policy. The district court dismissed Morast's nine-count complaint for failure to state a claim upon which relief can be granted and lack of subject matter jurisdiction. We affirm.

## I. FACTUAL BACKGROUND

Morast served as executive vice-president for defendant bank for four years. As executive vice-president he was responsible for the operation of the bank's branch offices. Morast also served as president and member of the board of directors of Northwest Georgia Computer Services (NGCS), a wholly owned subsidiary of the defendant bank. Morast received praise for his job performance in both capacities.[1]

On October 12, 1984 Morast was notified by Marvin Taylor and Lamar Harrison, other officers of defendant bank, of an irregular transaction in the bank accounts of Bert Lance, then chairman of the board of directors of the bank. On October 10 Bert Lance's personal secretary had requested the defendant bank to issue a cashier's check for $86,000 from the account of Bev-

---

* Honorable Luther M. Swygert, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

1. For purposes of a motion to dismiss, we must accept all of the allegations in the complaint as true. *Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1011 n. 4, 91 L.Ed. 1209 (1947); *Delesdernier v. O'Rourke & Warren Co.,* 305 F.2d 929, 929 (5th Cir.1962).

erly Lance, Bert Lance's son, payable to The Kris Company, a corporation owned by Bert Lance's family. The defendant bank issued the cashier's check against no offsetting funds. Upon further inquiry, Morast learned that as of October 12 the bank had received no funds from Bert Lance or Beverly Lance to offset the cashier's check.

Acting upon the advice of the defendant bank's attorney, James Langford, and one of the bank's directors, J.C. Maddox, Morast reported the irregular transaction to the Comptroller of the Currency, as required by the National Banking Act. Morast also cooperated fully with the Comptroller's subsequent investigation.

On June 12, 1985 Morast was fired from his positions at the defendant bank and NGCS. Morast alleges in his complaint that his discharge was without justification and was purely in retaliation for his reporting the irregular transaction and cooperating with the subsequent investigation. Morast's complaint contains nine counts, six of which are federal claims and three of which are pendent state claims. We lack subject matter jurisdiction over these claims.[2] Although we believe it is wrong to discharge a bank officer in retaliation for his reporting a banking violation, it is up to Congress, not the courts, to provide for an effective remedy.

## II. DISCUSSION

### A. *Federal causes of action*

The district court did not have subject matter jurisdiction merely because the defendant bank was a federally chartered bank. *See Southern Electric Steel Co. v. First Nat'l Bank of Birmingham*, 515 F.2d 1216, 1217 (5th Cir.1975). Therefore, the district court could obtain subject matter jurisdiction only if one or more of Morast's claims involved a question of federal law.

### 1. *Violation of 42 U.S.C. § 1985(1)*

Section 1985(1) prohibits, in relevant part, the following conspiracies:

If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof....

42 U.S.C. § 1985(1) (1982). The purpose of this section is to proscribe conspiracies that interfere with the performance of official duties by federal officers. *Kush v. Rutledge*, 460 U.S. 719, 724, 103 S.Ct. 1483, 1486, 75 L.Ed.2d 413 (1983). Morast contends that as a bank officer, he was a person holding "any office, trust, or place of confidence under the United States." Although national banks are heavily regulated by federal statutes and regulations, and although national bank officers have a legal obligation to ensure that their banks comply with these laws and regulations, national banks are not so much the "instrumentalities" of the federal government that its officers are agents of the federal government. *See Canlis v. San Joaquin Sheriff's Posse Comitatus*, 641 F.2d 711, 717–18 (9th Cir.), *cert. denied*, 454 U.S. 967, 102 S.Ct. 510, 70 L.Ed.2d 383 (1981).[3]

### 2. *Violation of 42 U.S.C. § 1985(2)*

Section 1985(2) prohibits, in relevant part, the following conspiracies:

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or wit-

---

**2.** The district court granted the defendants' motions to dismiss the action, which included motions for failure to state a claim upon which relief can be granted and lack of subject matter jurisdiction. Although the district court did not specify on which ground it dismissed the action, we find that the district court lacked subject matter jurisdiction. We note, however, that for the same reasons the complaint also fails to state a claim upon which relief can be granted.

**3.** Even if Morast was a federal officer for purposes of § 1985, this section was not intended to provide a remedy for economically motivated conspiracies. *See United Brotherhood of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 837, 103 S.Ct. 3352, 3360, 77 L.Ed.2d 1049 (1983).

ness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified. . . .

42 U.S.C. § 1985(2) (1982). Morast alleges that the defendants tried to deter him from testifying at a hearing before the Office of the Comptroller of the Currency (OCC). Morast contends that because such testimony was "in a matter pending in federal court pursuant to continuing Judgment and Orders of the United States District Court for the Northern District of Georgia," the conspiracy related to testimony before "any court of the United States."

■ Section 1985(2) applies only if the conspiracy attempted to prevent the witness from attending or testifying in federal court. *Kimble v. D.J. McDuffy, Inc.*, 648 F.2d 340, 348 (5th Cir.) (en banc), *cert. denied*, 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981). Morast's testimony was before the OCC, an administrative agency, not a federal court.

■ Even if Morast's testimony before the OCC is sufficient here, Morast has not alleged that the defendants conspired to stop him from attending or testifying at the hearing "by force, intimidation, or threat." Morast contends only that defendants retaliated against him with anger and vindictiveness, extensive questioning regarding leaks to the press, exclusion from board meetings, and a decreased workload.[4]

Finally, to make out a cause of action under § 1985(2) the plaintiff must have suffered an actual injury. Because Morast was an at will employee, *see* 12 U.S.C. § 24 (Fifth); O.C.G.A. § 34–7–1 (1981), he had no constitutionally protected interest in continued employment. Therefore, Morast's discharge did not constitute an actual injury under this statute.

### 3. *Violation of 42 U.S.C. § 1986*

■ Because a § 1986 action is predicated on a successful conspiracy action under § 1985, Morast has no cause of action under § 1986.

### 4. *"Bivens" action*

■ Morast alleges that he has a claim against the defendants for First and Fifth Amendment violations pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In *Bivens* the Supreme Court held that private citizens have a cause of action for damages for Fourth Amendment violations by federal officers acting under color of federal law, notwithstanding the absence of a congressionally authorized cause of action. Courts have extended this principle to plaintiffs seeking to bring actions under the Fifth Amendment, *see Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), and the First Amendment, *see, e.g., Dellums v. Powell*, 566 F.2d 167 (D.C.Cir.1977), *cert. denied*, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978).

Assuming that a plaintiff can assert a *Bivens* action against a private party,[5] the

---

**4.** The remainder of Morast's list of "retaliations" are conclusory in nature and are not specific examples of acts to deter testimony or attendance "by force, intimidation, or threat."

**5.** The Supreme Court has never considered a *Bivens* action against a private party. Three circuits, however, have held that an action for damages for a constitutional violation by a private party is permissible provided that the private party acted under the color of federal law. *See Reuber v. U.S.*, 750 F.2d 1039 (D.C.Cir.1984); *Dobyns v. E–Systems, Inc.*, 667 F.2d 1219 (5th Cir.1982); *Yiamouyiannis v. Chemical Abstracts*

*Serv.*, 521 F.2d 1392 (6th Cir.1975). Several other circuits have discussed the issue favorably but declined to so hold because either there was an insufficient allegation of a constitutional violation or the private party did not act under color of federal law. *See, e.g., Writers Guild of America, West, Inc. v. American Broadcasting Co.*, 609 F.2d 355 (9th Cir.1979), *cert. denied*, 449 U.S. 824, 101 S.Ct. 85, 66 L.Ed.2d 27 (1980); *McNally v. Pulitzer Publishing Co.*, 532 F.2d 69 (8th Cir.), *cert. denied*, 429 U.S. 855, 97 S.Ct. 150, 50 L.Ed.2d 131 (1976). Two circuits have refused to permit *Bivens* actions against private

defendants did not act under color of federal law here.

Because the concept of action under color of federal law for purposes of a *Bivens* action is almost identical to the doctrine of action under color of state law for purposes of a § 1983 action, we will apply the concepts of state action to Morast's *Bivens* claim. In *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961) the Supreme Court held that whether state action is involved depends on the particular circumstances of the case. The Court explained that "to fashion and apply a precise formula for recognition of state responsibility ... is an 'impossible task' which 'This Court has never attempted.'" *Id.* at 722, 81 S.Ct. at 860 (quoting *Kotch v. Board of River Port Pilot Comm'rs*, 330 U.S. 552, 556, 67 S.Ct. 910, 912, 91 L.Ed. 1093 (1947)). Although there is still no precise formula for evaluating state action, essentially three tests have emerged since *Burton:* (1) the symbiotic relationship test; (2) the public function test; and (3) the nexus test.

The actions by the defendants clearly do not meet the first two tests. Under the symbiotic relationship test, sometimes called the joint action test, the court must consider whether the government "has so far insinuated itself into a position of interdependence with [the private party] that it must be recognized as a joint participant in the challenged activity." *Id.* at 725, 81 S.Ct. at 862. Although defendant bank was a nationally chartered bank, it did not act jointly with the federal government; nor was it so interrelated with the federal government that they were in effect one entity. *See Hammond v. University of Tampa*, 344 F.2d 951 (5th Cir.1965).

Under the public function test, state action is present where the government has delegated to a private party a power "traditionally exclusively reserved to the State."

*Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 157, 98 S.Ct. 1729, 1734, 56 L.Ed.2d 185 (1978) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1974)). Banking is not a "traditionally exclusively reserved" function of the state.

Finally, and most importantly, the defendants' actions do not meet the nexus test. Under this test, "the inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson*, 419 U.S. at 351, 95 S.Ct. at 453. In *Jackson* the Supreme Court considered whether a private utility company's termination of services to one of its customers constituted state action. The Court held that although the private utility company was heavily regulated and had a monopoly in the community, there was no state action because there was an insufficient relationship between the state and the public utility to conclude that the utility acted *for* the state. *Id.* at 351–52, 95 S.Ct. at 453–54; *see also Sims v. Jefferson Downs, Inc.*, 611 F.2d 609 (5th Cir.1980); *Golden v. Biscayne Bay Yacht Club*, 530 F.2d 16 (5th Cir.) (en banc), *cert. denied*, 429 U.S. 872, 97 S.Ct. 186, 50 L.Ed.2d 152 (1976).

The federal government played no part in the defendants' decision to fire Morast. "[A] State normally can be held responsible for private decisions only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Rendell-Baker v. Kohn*, 457 U.S. 830, 840, 102 S.Ct. 2764, 2771, 73 L.Ed.2d 418 (1982) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1003, 102 S.Ct. 2777, 2785, 73 L.Ed.2d 534 (1982)); *see also Carlin Communication, Inc. v.*

---

parties. *See Fletcher v. Rhode Island Hosp. Trust Nat'l Bank*, 496 F.2d 927 (1st Cir.), *cert. denied*, 419 U.S. 1001, 95 S.Ct. 320, 42 L.Ed.2d 277 (1974); *Stevens v. Morrison-Knudsen Saudi Arabia Consortium*, 576 F.Supp. 516 (D.Md. 1983), *aff'd*, 755 F.2d 375 (4th Cir.1985). Inter-

estingly, in *Fletcher* the private party was a national bank. The First Circuit held without explanation that a *Bivens* action was not possible against a private party even if it acted under color of federal law. *Fletcher*, 496 F.2d at 932 n. 8.

*Southern Bell Tel. & Tel. Co.,* 802 F.2d 1352 (11th Cir.1986).

### 5. *Violation of 12 U.S.C. § 93*

■ Section 93 provides that if the directors of a national bank knowingly violate, or permit its officers to violate, any provision of the National Banking Act, "every director who participated in or assented to the same shall be held liable in his personal and individual capacity for all damages which the association, its shareholders, or any other person, shall have sustained in consequence of such violation." 12 U.S.C. § 93(a) (1982). Although some courts have permitted shareholders directly injured by banking violations to bring actions in their own behalf or on behalf of the bank, *see, e.g., Chesbrough v. Woodworth,* 244 U.S. 72, 37 S.Ct. 579, 61 L.Ed. 1000 (1917), such cases have not created a general private remedy for a violation of § 93. Private actions are permitted only where the individual suffered injuries "in consequence of" the violations. As discussed above, Morast suffered no actual injury in consequence of the defendants' violations because he was an at will employee and therefore had no legitimate expectation of continued employment.

■ Even if Morast suffered an actionable injury, he lacks standing to bring an action under § 93.[6] In *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) the Supreme Court established a test for determining whether a private right of action should be implied:

> First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted,"—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny

one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Id.* at 78, 95 S.Ct. at 2088 (quoting *Texas & Pacific R.R. v. Rigsby,* 241 U.S. 33, 39, 36 S.Ct. 482, 484, 60 L.Ed. 874 (1916)) (citations omitted).

Morast's § 93 claim fails this test. First, § 93's use of the phrase "or any other person" does not appear to encompass employees in its intended scope. Second, 12 U.S.C. § 24 (Fifth) provides that the board of directors can dismiss the bank's officers "at pleasure," which suggests a legislative intent not to provide Morast with this type of remedy for wrongful discharge.[7] Third, such a remedy is inconsistent with the legislative scheme because Morast was properly terminated by the defendant bank's board of directors. Finally, actions for wrongful termination are traditionally relegated to state law.

### 6. *Violation of 18 U.S.C. § 1964 (RICO)*

■ Morast alleges that he was discharged because of a conspiracy in violation of 18 U.S.C. § 1964 (1982). The Supreme Court has explained the requirements of a § 1964 RICO action as follows:

> Where the plaintiff alleges each element of the violation, the compensable injury necessarily is the harm caused by *predicate acts* sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise.... Any recoverable damages

---

**6.** Because standing is jurisdictional in nature, the effect of dismissing for lack of subject matter jurisdiction or lack of standing is identical. *See* C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3571 (1984).

**7.** 28 U.S.C. § 1348 provides for original federal jurisdiction in certain types of actions involving national banks. The section further provides that "for the purposes of all other actions," national banks should be treated like citizens of the state in which they are located, which suggests a legislative intent not to provide a federal forum for these "other" types of actions.

occurring by reason of a violation ... will flow from the commission of the predicate acts.

*Sedima v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 3286, 87 L.Ed.2d 346, 359 (1985) (emphasis added). According to *Sedima,* a plaintiff has standing to sue only "to the extent that, he has been injured ... by the conduct constituting the violation." *Id.* Morast contends that the only way defendants could continue their illegal scheme was to rid the bank of those people who would not "go along" with the plan.

Morast was not fired because he refused to participate in the bank's illegal scheme; therefore, Morast's injury, his discharge, did not flow directly from the predicate acts, the defendants' banking violations.[8] As the district court noted, Morast is not using the RICO statutes to stop the alleged illegal practices; rather, he is attempting to use the RICO statutes as a source of recovery for the loss of his job.

### B. *State causes of action*

■ Because the district court lacked subject matter jurisdiction over Morast's federal claims, it lacked jurisdiction over his pendent state claims. Even if the district court had jurisdiction over his pendent state claims, however, it properly dismissed the pendent claims for failure to state a claim upon which relief can be granted.

#### 1. *Violation of O.C.G.A. § 16-4-4 (RICO)*

Because Georgia's RICO statutes are essentially identical to the federal RICO statutes, the district court properly dismissed Morast's Georgia RICO claim.

#### 2. *Tortious interference with employment rights*

Under O.C.G.A. § 34-7-1 (1981), "an indefinite hiring may be terminated at will by either party." In Georgia, therefore, an employer may discharge an at will employee "with or without cause and regardless

of its motives." *Elliott v. Delta Air Lines, Inc.,* 116 Ga.App. 36, 156 S.E.2d 656, 657 (1967). Morast contends that defendant bank directors were third parties in relation to his employment at NGCS and thus their role in his discharge was in tortious interference with employment rights by a third party.

■ Morast admitted in his complaint that NGCS was a wholly owned subsidiary of the bank and was under the control of the defendant bank board of directors. Therefore, as the district court concluded, "[i]t is difficult to perceive how the defendants could thus have acted as third parties in removing plaintiff from both positions of employment." *Morast v. Lance,* 631 F.Supp. 474, 482 (N.D.Ga.1986).

■ Morast further contends, though, that the defendant bank directors acted as third parties because by piercing the "corporate veil," it becomes apparent that their actions evidenced a personal motivation. The Georgia Supreme Court has held that a party with the absolute right to discharge an employee, like the defendant board of directors here, cannot be held liable for wrongful discharge, regardless of his motives. *Georgia Power Co. v. Busbin,* 242 Ga. 612, 250 S.E.2d 442, 444 (1978). Such a party may be held liable only if he lacked the actual authority to fire the employee. *Taylor v. Foremost-McKesson, Inc.,* 656 F.2d 1029, 1032 (5th Cir. Unit B 1981). David Lance, as president and chief executive officer of the defendant bank, director on the board of the defendant bank, and a member of the board of directors of NGCS, did not act beyond the scope of his authority when he notified Morast that he was terminated from NGCS.

#### 3. *Violation of public policy*

■ Although other states have modified their at will doctrines, Georgia has steadfastly refused to limit judicially the Georgia at will doctrine. Morast has of-

---

**8.** *Callan v. State Chemical Mfg. Co.,* 584 F.Supp. 619 (E.D.Pa.1984) is inapposite because the plaintiffs in *Callan,* unlike Morast, were fired because they refused to participate in the illegal company policy.

fered no compelling reasons why this court should overrule the express intent of the Georgia courts and legislature.

AFFIRMED.