Harry D. WILLIAMS, Plaintiff,

v.

John R. HALL, et al., Defendants.

Bill E. McKAY, Jr., Plaintiff,

v.

ASHLAND OIL, INC., et al., Defendants.

Civ A. No. 84–149.

United States District Court, E.D. Kentucky, Ashland Division.

April 5, 1988.

John McCall and David Tachau, Brown, Todd & Heyburn, Louisville, Ky., for William E. McKay.

Warren Anthony Fitch and Ken Robinson, Kohlman & Fitch, Washington, D.C., for Harry D. Williams.

William E. Johnson and Robert M. Watt, III, Stoll, Keenon & Park, Lexington, Ky., for Ashland Oil, Inc., John R. Hall, Robert T. McCowan, Richard W. Spears.

Ben L. Kessinger, Jr., Lexington, Ky., for Ashland Oil, Inc.

David R. Monohan, Woodward, Hobson & Fulton, Louisville, Ky., John E. Jenkins, Jr., Jenkins, Fernstermaker, Krieger, Huntington, W.Va., for Orin E. Atkins.

Joe C. Savage & William Elliott, Savage, Garmer & Elliott, Lexington, Ky., for Charles J. Queenan, Jr.

## OPINION

BERTELSMAN, District Judge.

The summary judgment motion by defendants in this action requires the court to construe the causation requirements of the RICO conspiracy statute. 18 U.S.C. § 1962(d).

Although the record is voluminous and complex, a succinct summary of the facts will suffice for purposes of this motion.

These consolidated actions sound in wrongful discharge. Plaintiffs McKay and Williams are former officers of defendant Ashland Oil. They allege that for several years Ashland conducted the procurement phase of its operations in part by illegally bribing officials of Middle Eastern countries. Such bribes are prohibited by the Foreign Corrupt Practices Act. 15 U.S.C. § 78dd–1. Plaintiffs charge that these bribes were paid in a surreptitious manner disguised as investments. For instance, one of the contentions is that Ashland made an investment in a chrome mine which was not really an investment but a disguised bribe to the proprietor of the chrome mine, who was a foreign official.

Plaintiffs further charge that when they refused to participate in these illegal activities and refused to cooperate in the cover-up that necessarily resulted, they were discharged from their employment.

Plaintiffs claim that these activities involved violations of the RICO statutes, in that an enterprise (Ashland) was operated by defendants through a "pattern of racketeering activity" involving a multitude of prohibited "predicate acts," such as wire fraud, mail fraud, travelling in interstate and foreign commerce to deliver the bribes, (violating the Travel Act) and securities fraud in that false financial statements were filed with the SEC and distributed to investors. Specifically, the plaintiffs claim violations of 18 U.S.C. § 1962(a) and (c), which provide in relevant part:

"(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code [18 USCS § 2], *to use* or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment *or operation* of, any enterprise which is engages [sic] in, or the activities of which affect, interstate or foreign commerce.

\* \* \* \* \* \*

"(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, *to conduct or participate, directly or indirectly, in the conduct of such*

*enterprise's affairs* through a pattern of racketeering activity or collection of unlawful debt." (emphasis added).

Plaintiffs also allege a conspiracy to operate Ashland in violation of the conspiracy provisions of the RICO statute, 18 U.S.C. § 1962(d), which provides:

"(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section."

Plaintiffs also assert numerous state causes of action over which the court is exercising pendent jurisdiction. Among these are claims for wrongful discharge of both the contractual and public policy types, libel and slander, and intentional infliction of emotional distress. Also asserted is a claim for unlawful conspiracy under 42 U.S.C. § 1985. The court has dismissed some of these claims in separate unpublished orders.

Defendants have moved for summary judgment on all these claims. Of particular importance, however, are the RICO claims because of the treble damages and attorney fees allowed by the RICO civil action statute. *See* 18 U.S.C. § 1964(c). This Opinion addresses only the RICO issue.

Of course, almost all plaintiffs' factual allegations are hotly and indignantly denied by defendants. The record at the close of discovery, however, reveals that plaintiffs will be able to adduce some evidence, if only their own testimony, in support of their factual contentions. Therefore, on these summary judgment motions the facts will be presumed to be as plaintiffs claim.

It is apparent that plaintiffs will adduce evidence which, if believed, would establish the necessary prerequisites for a RICO civil claim. The evidence would tend to prove the operation of Ashland's business (the enterprise) by a "pattern of racketeering activity" consisting of numerous "predicate acts" of bribery, travel in interstate and foreign commerce to commit bribery, mail fraud and wire fraud in committing and disguising the bribery, securities fraud as part of the cover-up of the bribery and perhaps violations of the Victim and Witness Protection Act and obstruction of justice. Clearly, the evidence, if believed, would also tend to prove the existence of a conspiracy by numerous Ashland officers and employees and others to operate the enterprise in this illegal manner.

Indeed, while contesting the credibility of plaintiffs' evidence, defendants do not seem to contest that, if it is accepted, it would establish RICO violations. Rather, defendants base their summary judgment arguments on the proposition that plaintiffs lack standing to sue under RICO because they were not directly damaged by the predicate acts.

Defendants cite several cases in which discharged "whistleblowers" have been held not to have sustained injury from the predicate acts employed to operate a business by means of a pattern of racketeering activity. *See, e.g., Morast v. Lance,* 807 F.2d 926 (11th Cir.1987) (employee fired for reporting illegal activity had no RICO standing; however, court implies employee would have had standing if fired for refusing to participate); *Nodine v. Textron, Inc.,* 819 F.2d 347 (1st Cir.1987).

Plaintiffs cite contrary authority. *See Komm v. McFliker,* 662 F.Supp. 924 (W.D. Mo.1987); *Callan v. State Chemical Mfg. Co.,* 584 F.Supp. 619 (E.D.Pa.1984).

This division of authority seems to reflect a disagreement among the circuits as to whether a plaintiff may sue under § 1962(a) or (c) on the basis of an indirect injury from the predicate acts. The Sixth Circuit seems to be leaning toward the view that indirect injury is sufficient. *See Grantham & Mann, Inc. v. American Safety Products, Inc.,* 831 F.2d 596, 606 (6th Cir.1987) (plaintiff suffered no loss, direct or indirect), *quoting Haroco, Inc. v. American Nat'l Bank & Trust Co.,* 747 F.2d 384, 398 (7th Cir.1984). *Haroco* was cited with approval by the United States Supreme Court in *Sedima, S.P.R.L. v. Imrex,* 473 U.S. 479, 105 S.Ct. 3275, 3285–86, 87 L.Ed.2d 346 (1985). But the language of the Supreme Court is not clear as to whether indirect injury is sufficient. *Id.* 105 S.Ct. at 3286. Although the matter is

not free from doubt, the logical conclusion from the opinion of the Court in *Sedima* is that indirect injury is a sufficient basis for a RICO claim under § 1962(a) or (c). *See Sedima*, 105 S.Ct. at 3286 n. 15.

This issue is one that the court need not resolve definitively, however, in that plaintiffs here make another argument not made in the cases cited by defendant. In the alternative, the plaintiffs argue that they can meet the causation requirement, even if direct causation is required, because they were directly injured by the violation of 18 U.S.C. § 1962(d), the RICO conspiracy statute. Again, § 1962(d) reads:

> "(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section."

Plaintiffs argue that their proof will show that a conspiracy to violate § 1962(a) and (c) existed by operating Ashland in part by a series of illegal bribes, that part of the conspiracy was to cover up these illegalities by eliminating opposition within the company, and that plaintiffs were discharged and discredited as part of the cover-up, which actions constituted overt acts in furtherance of the conspiracy, even though they might not have been prohibited predicate acts.

Defendants argue that even though there is evidence of the conspiracy, the plaintiffs must still show direct injury from predicate acts as defined in the RICO statute to have standing to sue.

■ The issue is thus presented: Does a plaintiff have standing to sue under RICO if he can show the existence of a conspiracy to violate RICO, prohibited by § 1962(d), and that some overt acts committed in furtherance of the conspiracy were prohibited predicate acts under § 1961, but his only injury was caused by other overt acts, which were not "predicate acts."

■ The court holds that this issue must be resolved in favor of plaintiffs and that they have standing to sue for their discharge and resulting damage if they can prove that the terminations were overt acts done in furtherance of a conspiracy to oper-

ate Ashland through a pattern of racketeering activity as defined by the RICO statute.

Courts have been admonished to construe RICO liberally to effectuate its remedial purposes. *See Sedima, S.P.R.L. v. Imrex*, 105 S.Ct. at 3286. Section 1962(d) by its plain meaning forbids a conspiracy to violate RICO. Plaintiffs offer proof which, if believed, will show that their discharge from employment was an overt act committed in furtherance of a conspiracy to violate RICO.

The common law of civil conspiracy looks to overt acts as the source of compensable injury. *See Halberstam v. Welch*, 705 F.2d 472, 477 (D.C.Cir.1983); *Pacific Telephone and Telegraph Co. v. MCI Telecommunications Corp.*, 649 F.2d 1315, 1319 (9th Cir.1981); *Rose v. Arkansas Valley Environmental & Utility Authority*, 562 F.Supp. 1180, 1200 (W.D.Mo.1983); *Rose Hall LTD v. Chase Manhattan Overseas Bank*, 494 F.Supp. 1139, 1160 (D.Del.1980). The court believes that the Supreme Court, if called upon to address the issue, would follow the common law of civil conspiracy in determining standing under § 1962(d). *See, e.g., Medallion TV Enterprises v. SelecTV of California*, 627 F.Supp. 1290, 1298 (C.D.Cal.1986), *aff'd* 833 F.2d 1360 (9th Cir.1987).

Much instruction as to the common law of civil conspiracy may be found in the scholarly opinion of the court in *Halberstam v. Welch, supra*. There, the live-in paramour of a burglar was involved in a continuing conspiracy with the burglar to derive an unlawful living from burglaries. The paramour was sued by the estate of a man killed in the course of one of the burglaries, although the paramour had not been present at or concurred in the murder. The object of the conspiracy was to commit burglary not murder. The court reviewed several state cases and held that these cases established the following rules for liability for civil damages from an unlawful conspiracy:

> "As to the extent of liability, once the conspiracy has been formed, all its members are liable for injuries caused by acts

pursuant to or in furtherance of the conspiracy. A conspirator need not participate actively in or benefit from the wrongful action in order to be found liable. He need not even have planned or known about the injurious action, ... so long as the purpose of the tortious action was to advance the overall object of the conspiracy." 705 F.2d at 481.

\* \* \* \* \* \*

"To summarize our earlier discussion, in the District of Columbia a conspiracy requires: an agreement to do an unlawful act or a lawful act in an unlawful manner; an overt act in furtherance of the agreement by someone participating in it; and injury caused by the act. We have upheld the district court's finding that Hamilton and Welch agreed to undertake an illegal enterprise to acquire stolen property. *The only remaining issue, then, is whether Welch's killing of Halberstam during a burglary was an overt act in furtherance of the agreement.* We believe it was. As noted above, *a conspirator can be liable even if he neither planned nor knew about the particular overt act that caused injury, so long as the purpose of the act was to advance the overall object of the conspiracy.* Welch was trying to further the conspiracy by escaping after an attempted burglary, and he killed Halberstam in his attempt to do so. The use of violence to escape apprehension was certainly *not outside the scope of a conspiracy to* obtain stolen good through regular nighttime forays and then to dispose of them. *Cf. Davidson v. Simmons,* 203 Neb. 804, 280 N.W.2d 645 (1979) (driver of the getaway truck found liable as a coconspirator of an unplanned injury to a policeman inflicted by his inside partner, who was caught in the course of the burglary). In sum, the district court's findings that Hamilton agreed to participate in an unlawful course of action and that Welch's murder of Halberstam was a *reasonably foreseeable consequence* of the scheme are a sufficient basis for imposing tort liability on Hamilton according to the law on civil conspiracy." 705 F.2d at 487. (emphasis added).

*See also Hooks v. Hooks,* 771 F.2d 935 (6th Cir.1985); *cf. United States v. Excellair, Inc.,* 637 F.Supp. 1377, 1389 (D.Colo.1986) (injury to government was "result calculated by the conspirators").

In *Davidson v. Simmons,* 203 Neb. 804, 280 N.W.2d 645 (1979), relied on heavily by the court in *Halberstam, supra,* the court held all conspirators liable for acts "which could reasonably have been anticipated" when the conspiracy was entered into. "It is sufficient if the proof shows such a concert of action in the commission of the unlawful act or such other facts and circumstances from which the natural inference arises that the unlawful overt act was in furtherance of a common design, intention and purpose of the alleged conspirators to commit the same." *Davidson,* 280 N.W.2d at 649.

It may be seen from these authorities that liability for civil conspiracy is geared to damage caused by commission of overt acts done in furtherance of the conspiracy. This principle is discussed at length in the context of RICO in *Medallion TV Enterprises, Inc. v. SelecTV of California, Inc.,* 627 F.Supp. 1290, 1298 (C.D.Cal.1986), *aff'd* 833 F.2d 1360 (9th Cir.1987). The court in *Medallion* recognized the existence of the issue now before this court. It was not necessary for the court to resolve that issue, however, because it found that the actions complained of did not constitute a "pattern of racketeering activity." *Medallion TV Enterprises,* 627 F.Supp. at 1301. This court now holds that a plaintiff who has proven a § 1962(d) conspiracy to violate § 1962(a) or (c) has standing to recover under § 1964(c) if he can show injury from any overt acts done pursuant to the conspiracy. This holding is not contrary to the language of the Supreme Court in *Sedima* to the effect that the injury must be caused by the predicate acts, because the Court was only discussing § 1962(c) at that point. *See Sedima,* 105 S.Ct. at 3286. The court is of the opinion that the other language of *Sedima* concerning the liberal construction to be given RICO dictates at least that damage from a RICO conspiracy is action-

able to the same extent as damage from a common law or antitrust conspiracy. *See id.; Medallion TV Enterprises,* 627 F. Supp. at 1300.

> "Thus in order for a plaintiff to have a private cause of action under 18 U.S.C. § 1962(d), there must at the very least be one or more *overt acts* causing injury to the plaintiff or his business or property under 18 U.S.C. § 1964(c)." (emphasis added).

*Medallion TV Enterprises,* 627 F.Supp. at 1298.

I think the basis for the ruling will become clearer if we consider the application of the principles applied here to a different fact situation.

Suppose several racketeers were to decide to take over a construction company. Suppose they said, "Let's agree to operate this company in violation of the law. Let's rig bids, bribe officials, intimidate and threaten competitors not to bid on jobs and let's travel in interstate commerce to accomplish all of this. And, oh yes, let's fire all of the honest employees in the company, so we won't have any opposition in accomplishing our scheme."

Although the fact pattern is different here, the causal relationships are similar. The court believes that Congress intended to afford the discharged employees a civil remedy in such a situation and that the Supreme Court following *Sedima* would so interpret the RICO statute.

Therefore, the motions for summary judgment on the RICO claims must be and they are, hereby denied.