Richard C. FLINDERS, Plaintiff,

v.

DATASEC CORPORATION, Douglas Callaway, and Frank Williams, Defendants.

Civ. A. No. 89–1763–A.

United States District Court, E.D. Virginia, Alexandria Division.

July 16, 1990.

John A. Keats, Law Offices of John Keats, William F. Krebs, Stephenson, Kellogg, Krebs & Moran, P.C., Fairfax, Va., for plaintiff.

Nathaniel Rayle, Edward J. Smith, Jr., Santarelli, Smith, Kraut & Carroccio, Washington, D.C., for defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

### Introduction

Not yet decided in this Circuit is whether an employee terminated for threatening to expose, or refusing to participate in, his employer's allegedly unlawful racketeering practices has standing to sue his employer under RICO[1] to recover for the termination. Defendants' threshold dismissal motions in this case present this question. And while the answer to this question is the same for both the substantive RICO offense alleged in Count I and the RICO conspiracy offense alleged in Count II, the analytical path to the answer is different for each count. With respect to the substantive RICO offense alleged in Count I, settled authority from other circuits persuades the Court that plaintiff's termination is not an "injury" that occurred "by reason of" the alleged racketeering acts. *See* 18 U.S.C. § 1964(c). In the case of the RICO conspiracy alleged in Count II, authority is sparse and in conflict. But the same answer applies because plaintiff's termination was not caused by a predicate offense or a wrongful overt act. Accordingly, for the reasons stated here, the RICO counts (Counts I and II) must be dismissed for failure to state a claim upon which relief may be granted. *See* Rule 12(b)(6), Fed.R.Civ.P. The Court reserves its ruling with respect to the state claims asserted in Counts III and IV. Counsel for Datasec has withdrawn. Upon notification that new counsel has been acquired, the Court may order new briefs with respect to these Counts.

### Background[2]

Defendant, Datasec Corporation, is a New Hampshire company with its principal place of business in New Hampshire and an office in Virginia. It is engaged chiefly in the sale of "Tempest" computer products and technology.[3] Plaintiff, a Virginia citizen, was hired by Datasec in July 1988 to serve as Vice President of Sales. Individu-

---

**1.** Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968.

**2.** Facts alleged in the complaint are assumed true in the disposition of a threshold dismissal motion pursuant to Rule 12(b)(6), Fed.R.Civ.P. *See Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972) (*per curiam* ).

**3.** Computer and facsimile technology used in conjunction with classified information in the defense industry is known as "Tempest" technology and must meet certain security criteria. For a general description of Tempest facsimile machines, see *Secure Services Technology, Inc. v. Time & Space Processing, Inc.,* 722 F.Supp. 1354 (E.D.Va.1989).

al defendants, Callaway and Williams, are New Hampshire citizens and respectively, Datasec's president and vice-president for business development.

At the times relevant to the complaint, Datasec sold the "Paradyne" computer line. Acquired by AT & T in 1989, Paradyne followed a practice of handling only those equipment orders that exceeded $25,000. Smaller orders were handled by certain dealers, including Datasec, specifically authorized by Paradyne to do so. Wary of the potential for kickbacks in return for steering orders, Paradyne had a strict policy in force prohibiting its employees from soliciting or accepting gratuities from dealers. Despite this, plaintiff alleges that Datasec paid gratuities to Paradyne's customer referral personnel to induce them to steer business to Datasec. According to the complaint, this kickback scheme used interstate telephone communications and the U.S. mails, in violation of the mail and wire fraud statutes. *See* 18 U.S.C. §§ 1341, 1343.

By early 1989, plaintiff had become aware of this scheme. In April 1989, plaintiff informed defendants that he would not participate in the scheme. In response, defendant Callaway (i) demoted plaintiff to vice president of Eastern Regional Sales, (ii) named himself to replace plaintiff as "acting Vice President of Sales" and (iii) attempted unilaterally to change plaintiff's compensation-commission agreement. Thereafter, on April 24, 1989, defendants terminated plaintiff. The complaint alleges this occurred because plaintiff persisted in his refusal either to countenance, or to participate in, the kickback scheme. The complaint also alleges that plaintiff, at all times, fully and satisfactorily performed his corporate duties.

On these facts, plaintiff asserts four claims against defendants. In Count I, plaintiff seeks treble damages and attorneys' fees under RICO, claiming an injury to his business or property by reason of defendants' conduct of an enterprise's affairs through a pattern of racketeering activity. *See* 18 U.S.C. §§ 1962(c), 1964(c). Count II alleges a conspiracy to violate RICO and seeks the same damages. *See* 18 U.S.C. §§ 1962(d), 1964(c). Treble damages are also sought in Count III, which alleges that defendants conspired to injure plaintiff in his trade, business or profession in violation of Virginia Code §§ 18.2–499 and 18.2–500. Finally, Count IV asserts a breach of contract claim against Datasec for failure to pay plaintiff $8,690 in commissions due and owing, and refusing to sell plaintiff 2,000 shares of Datasec stock pursuant to a stock option. Defendants, in response, filed a motion to dismiss all claims pursuant to Rules 12(b)(1) and 12(b)(6).

### Analysis

#### A. Count I: RICO

██ Under § 1964(c), standing to sue under RICO requires that a plaintiff's injuries occur "by reason of" the predicate racketeering acts. As the Supreme Court in *Sedima* put it:

'[a] defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct....'

... [T]he compensable injury necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern.... Any recoverable damages occurring by reason of a violation of § 1962(c) will flow from the commission of the predicate acts.

*Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496–97, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) (quoting *Haroco, Inc. v. American Nat'l Bank & Trust Co.,* 747 F.2d 384, 398 (7th Cir.1984), *aff'd per curiam,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985)). Put simply, the "by reason of" language in § 1964(c) imports a proximate causation requirement into civil RICO. *See O'Malley v. O'Neill,* 887 F.2d 1557, 1561 (11th Cir.1989); *Brandenburg v. Seidel,* 859 F.2d 1179, 1189 (4th Cir.1988); *Cullom v. Hibernia Nat'l Bank,* 859 F.2d 1211, 1214 (5th Cir.1988); *Sperber v. Boesky,* 849 F.2d 60, 63 (2d Cir.1988); *Haroco,* 747 F.2d at 398.

The question presented here, therefore, is whether plaintiff's firing was proximate-

ly caused by any of the alleged predicate acts. A negative answer necessarily follows from an analysis of the relationship between the firing and the alleged predicate acts. These acts, it appears, are the telephone calls between Datasec and Paradyne personnel setting up the kickback arrangements and arranging for the customer referrals. Also included are Datasec's mailings of the kickback checks to the cooperating Paradyne employees. Manifestly, plaintiff was not the target of these acts. They were not aimed at him; rather, they were aimed at Datasec's competitors.[4] Thus, the firing was not proximately caused by the predicate acts; instead, it was an incidental result of circumstances surrounding those acts. Put in conventional tort analysis terms, the scope of the risk created by the RICO scheme was harm to Datasec's competitors and perhaps to Paradyne, but not the loss of plaintiff's job. That occurred not as a result of the predicate acts, but of his refusal to participate in them. So viewed, it is readily apparent that plaintiff's termination injury did not occur "by reason of" the alleged RICO scheme.

Most courts have reached the same result on essentially the same reasoning. *See Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 24 (2d Cir.1990); *O'Malley*, 887 F.2d at 1561; *Burdick v. American Express Co.*, 865 F.2d 527, 529–30 (2d Cir.1989) (*per curiam*); *Cullom*, 859 F.2d at 1216; *Pujol v. Shearson/American Express Inc.*, 829 F.2d 1201, 1205 (1st Cir. 1987); *Kouvakas v. Inland Steel Co.*, 646 F.Supp. 474, 477 (N.D.Ind.1986); *Diamond v. Reynolds*, 1986 WL 15375 (D.Del.), *aff'd in part and rev'd on other grounds*, 853 F.2d 917 (3d Cir.), *cert. denied*, 488 U.S. 955, 109 S.Ct. 392, 102 L.Ed.2d 381 (1988); *cf. Warren v. Manufacturers Nat'l Bank*, 759 F.2d 542 (6th Cir.1985) (bankrupt corporation's terminated chief executive officer, suing to recover for his job loss from bank

that allegedly defrauded company and precipitated the bankruptcy, lacked standing under RICO). Nor should the result be any different where the firing occurs because the person refuses to cooperate or threatens to blow the whistle on the scheme. In either event, the firing is only incidental to the RICO scheme; it may facilitate the scheme, but is not itself caused by the racketeering acts. *See, e.g., Nodine v. Textron, Inc.*, 819 F.2d 347, 349 (1st Cir.1987) (discharge for reporting RICO scheme to authorities did not occur "by reason of" the RICO scheme).

The reasoning of these authorities is persuasive and requires that Count I be dismissed.

### B. *Count II: RICO Conspiracy*

Analysis of plaintiff's standing to bring the RICO conspiracy claim is more problematic. Recently, several circuits have split over whether *Sedima*'s mandate that RICO injuries must flow from a section 1961(1) predicate offense applies to an employee terminated allegedly in furtherance of a RICO conspiracy. The Second, Fifth, and Eleventh circuits have held that terminated employees do not have standing to recover on RICO conspiracy causes of action. *See Hecht; Cullom; Morast v. Lance*, 807 F.2d 926 (11th Cir.1987). *Hecht* explicitly, and *Cullom* and *Morast* implicitly, read *Sedima* as limiting standing narrowly to those RICO conspiracy plaintiffs whose injuries are caused by predicate offenses. The Third Circuit, however, has reached a different result. That court upheld a RICO conspiracy claim on the ground that an injury caused by *any* overt act furthering the unlawful agreement, not just predicate offenses, is sufficient to confer standing for a RICO conspiracy claim. *Shearin v. E.F. Hutton Group*, 885 F.2d

---

**4.** The "aimed-target" language is familiar in the antitrust context. It was developed in connection with applying § 4 of the Clayton Act, 15 U.S.C. § 15, which permits plaintiffs to recover treble damages if they have been injured in their business or property "by reason of" an antitrust violation. *See, e.g., Karseal Corp. v.*

*Richfield Oil Corp.*, 221 F.2d 358, 362 (9th Cir. 1955). The use of this language in the RICO context is not inappropriate given that Congress modeled RICO's treble damage provision after § 4 of the Clayton Act. *See Sedima*, 473 U.S. at 487–90, 105 S.Ct. at 3280–82.

1162 (3d Cir.1989); *accord Williams v. Hall,* 683 F.Supp. 639 (E.D.Ky.1988). In short, three circuits require that a RICO conspiracy injury be caused by a predicate offense, while one circuit takes a broader view of RICO conspiracy standing and holds that any overt act of the conspiracy, even if not a predicate offense, is sufficient to confer standing. As the Fourth Circuit has not yet decided this issue, it is here a question of first impression.

The source of this circuit split seems to be a dispute over the scope of *Sedima.* The three circuits adopting the narrow view of standing assume, without discussion, that *Sedima*'s predicate offense causation requirement applies to the § 1962(d) conspiracy offense as well as to the § 1962(a)–(c) substantive offenses. By contrast, the Third Circuit, noting that the Supreme Court's discussion of RICO standing focused solely on the § 1962(c) substantive violation, concluded that *Sedima*'s predicate offense causation requirement should be limited to those injuries caused by substantive violations. Articulating the *Shearin* panel's position more fully, Chief Judge Gibbons commented that *Sedima* merely states a truism about RICO substantive violations. The three substantive violations—namely (i) investing in, (ii) acquiring, or (iii) conducting an enterprise through a pattern of predicate racketeering activities—literally require that any injury "flow" from the predicate offenses. The predicate offenses, as the essential, fundamental elements of the pattern of racketeering activity must, by definition, be the cause of a substantive RICO injury. This is plainly so. But Judge Gibbons goes on to note that this premise is not true for RICO conspiracies because "[p]redicate acts for conspiracy do not of necessity consist of section 1961(1) racketeering activity." *Shearin,* 885 F.2d at 1169.

*Sedima* provides little assistance in resolving this dispute over RICO conspiracy standing. For while the underlying complaint there contained both § 1962(c) and § 1962(d) claims, *see Sedima,* 473 U.S. at 484, 105 S.Ct. at 3278, 87 L.Ed.2d 346 (1985); *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 741 F.2d 482, 485 (2d Cir.1984), the Supreme Court, as *Shearin* noted,[5] inexplicably did not address standing for the § 1962(d) conspiracy violation then before it. This omission fuels this dispute. Since both substantive and conspiracy claims were present in *Sedima,* the opinion may arguably be read to require predicate act causation for all RICO violations. But this interpretation is no more persuasive than the *Shearin* panel's conclusion that, because the Supreme Court did not address conspiracy, *Sedima* is inapplicable to § 1962(d). Inferences drawn from silence are often unreliable. Upon further review, this Court concludes that the Third Circuit's approach to RICO conspiracy standing is correct, but a different result is required on the facts at bar.

■■■ Semantically, the Third Circuit's approach is sounder, for it follows more closely the plain meaning of the statute. Nothing in RICO limits compensable conspiracy injuries solely to those caused by overt acts that also happen to be predicate offenses. Section 1964(c) authorizes a civil action by "[a]ny person injured in his business or property by reason of a violation of section 1962." And § 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Thus, a RICO conspiracy violation arises from the mere agreement to violate one of the substantive RICO provisions; it does not require the completion of a substantive violation or predicate offense.[6] The conspiracy

---

**5.** Interestingly, the *Shearin* panel mistakenly believed that *Sedima*'s silence concerning RICO conspiracy standing stemmed from the absence of a § 1962(d) claim before the Supreme Court. *Shearin,* 885 F.2d at 1169.

**6.** The circuits are split on whether a criminal RICO conspiracy requires proof of the commission of an overt act. This circuit and others

require proof of an overt act. *See, e.g., United States v. Schell,* 775 F.2d 559, 568 (4th Cir.1985), *cert. denied,* 475 U.S. 1098, 106 S.Ct. 1498, 89 L.Ed.2d 898 (1986); *United States v. Phillips,* 664 F.2d 971, 1038 (5th Cir.1981), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982). Yet other circuits do not, noting that § 1962(d) fails to specify an overt act as an

violation is complete whether or not a predicate offense has been committed.[7] From this analysis emerges the principle, recognized in *Shearin*, that RICO conspiracy standing does not require an injury caused by a predicate offense. It further follows (although not recognized in *Shearin*) that in accordance with established civil conspiracy law, standing for RICO conspiracy claims exists for injuries proximately caused by any *wrongful* overt act.[8]

None of the opinions restricting RICO conspiracy standing to injuries caused by predicate offenses offers any persuasive argument against this result. The *Cullom* and *Morast* opinions merely cite *Sedima*, without discussion, as the reason for denying recovery for RICO conspiracy injuries to employees terminated for not participating in RICO violations. *See Cullom*, 859 F.2d at 1214–16;[9] *Morast*, 807 F.2d at 932–33. *Hecht*, in reaching the

same conclusion, refers to Congress's lack of intent to permit recovery for non-predicate offense overt acts. *See Hecht*, 897 F.2d at 25. This intent argument is unpersuasive; it is refuted by the statute's plain meaning. Moreover, such a restrictive reading of RICO flies in the face of the many recent admonitions to construe RICO broadly. *See Sedima*, 473 U.S. at 497, 105 S.Ct. at 3285; *Busby v. Crown Supply, Inc.*, 896 F.2d 833, 838 (4th Cir.1990). Further, the series of Tenth Circuit decisions relied on by defendants also does not undermine the principle that RICO conspiracy standing is satisfied by an injury proximately caused by any wrongful overt act. Dismissal of the RICO conspiracy in those cases resulted from a fatal defect in the conspiracy claim and not, as defendants argue, merely and necessarily because the substantive RICO claims were dismissed.[10]

---

element of RICO conspiracy. *See, e.g., United States v. Angiulo*, 847 F.2d 956, 964 (1st Cir.), *cert. denied*, 488 U.S. 852, 109 S.Ct. 138, 314, 102 L.Ed.2d 110 (1988). But significantly, no circuit requires commission of a predicate offense to establish a criminal RICO conspiracy. *See, e.g., Phillips*, 664 F.2d at 1038.

7. Note, however, that in this circuit a RICO conspiracy plaintiff must allege and prove that defendants agreed to commit two predicate offenses. *See United States v. Tillet*, 763 F.2d 628, 632–33 (4th Cir.1985); *United States v. Truglio*, 731 F.2d 1123, 1132–33 (4th Cir.), *cert. denied*, 469 U.S. 862, 105 S.Ct. 197, 83 L.Ed.2d 130 (1984). This is apparently the minority view. *Compare Truglio*, 731 F.2d at 1132–33; *United States v. Ruggiero*, 726 F.2d 913, 921 (2d Cir.), *cert. denied*, 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984); *and United States v. Winter*, 663 F.2d 1120, 1136 (1st Cir.1981), *cert. denied*, 460 U.S. 1011, 103 S.Ct. 1250, 75 L.Ed.2d 479 (1983) (RICO conspiracy defendants must agree to commit two predicate offenses) *with United States v. Kragness*, 830 F.2d 842, 860 (8th Cir. 1987); *United States v. Rosenthal*, 793 F.2d 1214, 1229 (11th Cir.1986), *modified on other grounds*, 801 F.2d 378 (11th Cir.1986), *cert. denied*, 480 U.S. 919, 107 S.Ct. 1377, 94 L.Ed.2d 692 (1987); *United States v. Neapolitan*, 791 F.2d 489, 494–97 (7th Cir.), *cert. denied*, 479 U.S. 940, 107 S.Ct. 422, 93 L.Ed.2d 372 (1986); *United States v. Joseph*, 781 F.2d 549, 554 (6th Cir. 1986); *United States v. Adams*, 759 F.2d 1099, 1116 (3d Cir.), *cert. denied*, 474 U.S. 906, 971, 106 S.Ct. 275, 336, 88 L.Ed.2d 236 (1985); *and United States v. Tille*, 729 F.2d 615, 619 (9th Cir.), *cert. denied*, 469 U.S. 845, 105 S.Ct. 156, 83

L.Ed.2d 93 (1984) (RICO conspiracy defendants need only agree to be a member of the conspiracy; they need not agree to commit two predicate offenses individually).

8. In civil conspiracy law, the mere existence of an unlawful agreement does not support a finding of civil liability; an overt act must be present to serve as the source of the plaintiff's injury. *See Medallion TV Enters. v. SelecTV of California, Inc.*, 627 F.Supp. 1290, 1298 (C.D.Cal. 1986); *Gallop v. Sharp*, 179 Va. 335, 338, 19 S.E.2d 84, 86 (1942). And importantly, the overt act must also be unlawful. This requirement stems from the necessity that the injury arise from the overt act and that recovery in tort is limited to injuries arising from unlawful acts.

9. While the Fifth Circuit's opinion does not make clear that Cullom had filed a § 1962(d) claim, the district court's opinion does. *See Cullom v. Hibernia Nat'l Bank*, 666 F.Supp. 88 (E.D.La.1987).

10. Three of the four Tenth Circuit cases involved dismissals because the continuity necessary to establish a pattern of racketeering was absent. The absence of that pattern was as fatal to the conspiracy claim as it was to the substantive claims, for without a RICO pattern, there could be no agreement to violate RICO. *See Edwards v. First Nat'l Bank*, 872 F.2d 347, 352 (10th Cir.1989); *Condict v. Condict*, 826 F.2d 923, 927 (10th Cir.1987); *Torwest DBC, Inc. v. Dick*, 810 F.2d 925, 927 n. 2 (10th Cir.1987). The fourth of these decisions dismissed the substantive RICO claim because there was no inju-

These decisions are not contrary to the proposition that RICO conspiracy standing may exist even when RICO substantive standing does not. The latter requires predicate offense proximate causation, while the former may be met by proximate causation flowing from any wrongful overt act, of which predicate offenses are a subset. It seems an appealing symmetry would result from imposing predicate offense causation on both the RICO substantive violations and the related RICO conspiracy. But the appeal disappears as soon as it is recalled that these are different violations with different constituent elements. *See Iannelli v. United States,* 420 U.S. 770, 777–78, 95 S.Ct. 1284, 1289–90, 43 L.Ed.2d 616 (1975).

■ Given this principle of RICO conspiracy standing, the question at bar is whether the overt act here in issue—defendants' termination of plaintiff—was a wrongful act. Virginia law compels the conclusion that it was not. At most, the termination was a breach of contract, not an unlawful act. Even a contract breach is doubtful, for it seems plaintiff was an at-will employee. The complaint is silent on whether plaintiff's contract was for a term. In Virginia, where an employment contract does not specify the duration of performance, a rebuttable presumption arises that the employment is terminable at will. *See Miller v. SEVAMP, Inc.* 234 Va. 462, 362 S.E.2d 915, 917 (1987). The only exception to Virginia's at-will employment doctrine is that an at-will employee discharged in contravention of an announced public policy of the state has a tort cause of action for wrongful discharge. *See Bowman v. State Bank of Keysville,* 229 Va. 534, 331 S.E.2d 797, 801 (1985). To date, this narrow public policy exception has been limited to public, rather than private rights. *See Miller,*

362 S.E.2d at 918. And it also appears that this exception has thus far been correctly limited to public rights embodied in state statutes. *See Bowman,* 331 S.E.2d 797, and cases cited therein. *But see Fielder v. Southco, Inc.,* 699 F.Supp. 577 (W.D.Va. 1988) (finding improper discharge cause of action based on public policy embodied in Title VII). Thus, assuming plaintiff was an at-will employee, his termination was not wrongful as it contravened no public policy of the state.

The same result obtains even if plaintiff's employment contract was for a specific duration. The termination of this contract may give rise to a breach of contract claim, but it was not unlawful, provided, as is here the case, that the termination violated no public policies embodied in state statutes. Put another way, the discharge of an employee for refusing to participate in a scheme violative of the federal RICO law is not wrongful under the Virginia law. Hence the termination is not a wrongful overt act that gives rise to standing for plaintiff to bring a RICO conspiracy action.

Nor can plaintiff claim that his discharge was wrongful because the RICO conspirators tortiously interfered with his employment contract. Virginia recognizes a tort for conspiracy to induce a breach of contract. *See Bowman,* 331 S.E.2d at 801. But the facts alleged here do not support such a claim. Datasec, as a party to the contract, cannot tortiously interfere with the contract. And defendants Callaway and Williams, as Datasec employees, also cannot conspire with Datasec in this regard because the intra-corporate conspiracy doctrine holds that a corporation cannot conspire with its own agents or employees. *See Buschi v. Kirven,* 775 F.2d 1240, 1251 (4th Cir.1985).[11] While unnamed Paradyne

ry arising from the investment of income derived from racketeering activity. *Grider v. Texas Oil & Gas Corp.,* 868 F.2d 1147, 1151 (10th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989). This flaw, in the Tenth Circuit's view, was fatal to both the substantive and conspiracy claims (note, however, that this "investment use" rule was recently rejected in this circuit, *see Busby v. Crown Supply, Inc.,* 896 F.2d 833, 837 (4th Cir.1990)). In sum, dismissal of a RICO substantive claim does not automati-

cally and necessarily require dismissal of a related conspiracy claim. Only where the fatal flaw in the RICO substantive claim is also a flaw in the conspiracy claim is dismissal of the conspiracy claim also appropriate.

**11.** An exception to this doctrine exists where a corporate agent "has an independent personal stake in achieving the corporation's illegal objective." *Greenville Publishing Co. v. Daily Reflector, Inc.,* 496 F.2d 391, 399 (4th Cir.1974).

**936**

employees are eligible co-conspirators, the complaint is devoid of any facts to support a claim that Paradyne employees tortiously interfered with plaintiff's employment contract. *Cf. Bowman,* 331 S.E.2d at 801–02 (on analogous facts, the Supreme Court of Virginia upheld demurrer to conspiracy to tortiously interfere with contract claim).

In sum, standing to recover for RICO conspiracy injury is appropriate where the injury is proximately caused by predicate offenses or by overt acts that are not predicate offenses, but are themselves wrongful. As plaintiff's discharge was not wrongful under Virginia law, he lacks standing to recover under the RICO conspiracy claim.[12]

Defendants' motions to dismiss raise a number of other issues not treated here or decided; they remain under advisement. As defendants' counsel has recently withdrawn and as there is some doubt over whether Datasec has filed for bankruptcy, the Court has concluded that it would be useful to hold a pre-trial status conference in this matter for purposes of scheduling a trial date, hearing further oral argument on any remaining issues and entry of an order reflecting the conclusions of this Memorandum Opinion.

---

To avoid having the exception swallow the rule, courts limit its application to those corporate agents who gain a direct personal benefit distinct from their natural interest in improving the corporation's profitability. *See Selman v. American Sports Underwriters, Inc.,* 697 F.Supp. 225, 239 (W.D.Va.1988). The complaint alleges no facts to support the application of this exception here.

**12.** The RICO conspiracy standing issue is a knotty one, made all the more so by the lack of guidance in the statute or legislative history. In this respect, this civil RICO case is not unique. It is the rare civil RICO case that does not raise a number of difficult questions the terms of the statute do little to answer. This often leads, not surprisingly, to tortuous, if not tortured, analysis and inelegant, if not astonishing, results. All of this moves the Court to observe, *obiter,* that reasonable persons might well doubt whether civil RICO was adequately considered before passage and whether it is playing a socially useful role in the administration of civil justice, given the substantial time and resources devoted to solving its puzzles.