The Reverend Father John P. O'MALLEY, O.S.A., individually, and James A. Nesbitt, individually, Plaintiffs–Appellants,

v.

The Reverend Father Patrick H. O'NEILL, O.S.A., et al., Defendants–Appellees.

No. 88–5572.

United States Court of Appeals, Eleventh Circuit.

Nov. 14, 1989.

Jesse C. Jones, Bailey & Hunt, Kathy J. Bible, Joel S. Perwin, Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin, P.A., Miami, Fla., for plaintiffs-appellants.

Love Phipps, Corlett, Killian, Hardeman, McIntosh & Levi, Miami, Fla., for St. Thomas University.

Robert M. Klein, Stephens, Lynn, Klein & McNicholas, P.A., Miami, Fla., for O'Neill.

Before ANDERSON and COX, Circuit Judges, and SHOOB,* District Judge.

COX, Circuit Judge.

This is an appeal from a dismissal for failure to state a claim. The plaintiffs, The Reverend Father John P. O'Malley, O.S.A., and James A. Nesbitt, brought suit against The Reverend Father Patrick H. O'Neill, O.S.A., St. Thomas of Villanova University, the Board of Trustees of St. Thomas University, and two of the trustees in their individual capacities, for damages and equitable relief arising from alleged violations of the Racketeer Influenced and Corrupt Organizations Act of 1970, 18 U.S.C. § 1961 *et seq.* The plaintiffs claim that they were fired for their refusal to participate in or continue to conceal a mail fraud scheme. The district court held that the plaintiffs lacked standing to assert a RICO claim because their only injury, loss of employment, was not caused by the predicate acts of mail fraud. Moreover, the district court found that plaintiffs failed properly to allege the elements of a conspiracy. We agree with the district court, and affirm the dismissal.

## I. BACKGROUND

Since the district court dismissed the complaint for failure to state a claim, we will assume the facts alleged by the plaintiffs to be true. *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); *Burch v. Apalachee Community Health Services, Inc.,* 840 F.2d 797, 798 (11th Cir.1988). This case arises from

* Honorable Marvin H. Shoob, U.S. District Judge for the Northern District of Georgia, sitting by designation.

a controversy at St. Thomas of Villanova University, a private educational institution incorporated under Florida law and sponsored by the Province of Saint Thomas of Villanova of the Order of Saint Augustine of the Roman Catholic Church. One plaintiff, Father John P. O'Malley, served as vice-president of Academic Affairs and provost at St. Thomas, and his co-plaintiff, Mr. James A. Nesbitt, was dean of Admissions. The primary defendant, Father Patrick H. O'Neill, was president of St. Thomas.

## THE CLAIMS

In describing the plaintiffs' claims, all parties to this appeal have utilized both the complaint filed by the plaintiffs and a "RICO Case Statement" filed by the plaintiffs pursuant to an order entered by the district court. We shall do the same.[1]

O'Malley and Nesbitt discovered that St. Thomas University was operating at a deficit and that O'Neill was concealing its true financial condition through various means. In the course of preparing a budget proposal for the 1986–1987 school year, the plaintiffs learned that O'Neill was concealing a deficit by using restricted federal student assistance funds to offset St. Thomas's operating expenses; and that he was obtaining federal government and private grants requiring matching funds when St. Thomas had no such matching funds available. Further, they learned that O'Neill distorted St. Thomas's financial statements by basing budget projections on non-existent pledges of financial support. In addition, O'Neill permitted foreign students to attend St. Thomas without visas required by

federal law. On one occasion O'Neill asked Nesbitt to send a false verification form to the Immigration and Naturalization Service, but Nesbitt refused.

In August of 1986, O'Malley and Nesbitt confronted O'Neill and urged him to make a full disclosure of the true financial condition of St. Thomas. O'Neill refused to do so, however, and insisted that he would make up the difference through his own fund raising efforts.

After repeated confrontations between plaintiffs and O'Neill over management of St. Thomas, O'Neill sent a letter to O'Malley demanding his resignation. On October 3, 1986, O'Neill terminated Nesbitt. On the same date, at the request of O'Neill, the Board of Trustees, acting through defendants J. Pepe Fanjul and Kenneth Whittacker, again informed O'Malley that he must resign by October 5, 1986, or be terminated. When he refused to submit his resignation, he was terminated.[2]

The complaint in the district court named as defendants Father O'Neill, St. Thomas University, Fanjul and Whittacker, in their individual capacities, and the remaining nine trustees in their official capacities.[3] The complaint includes four counts, two of which are civil RICO claims.[4] Count I charges O'Neill with a substantive violation of 18 U.S.C. § 1962(c) (RICO). Count II alleges a conspiracy among O'Neill, Fanjul, Whittacker and the University in violation of 18 U.S.C. § 1962(d) (RICO Conspiracy). The only predicate acts upon which plaintiffs base their RICO claims are alleged acts of mail fraud under 18 U.S.C. § 1341 (1982).[5]

---

1. No issue is presented on this appeal relative to the propriety of such an order.

2. While we assume these allegations to be true for the purposes of this appeal, they are hotly disputed by the defendants.

3. The complaint does not seek damages against the trustees sued in their capacity as trustees; as to them it seeks only an order compelling the trustees to reinstate O'Malley and Nesbitt.

4. The remaining two counts asserted claims under state law for misrepresentation and slander. The district court dismissed these claims with-

out prejudice upon dismissal of the federal claims. The propriety of dismissing the state law claims is not an issue on this appeal.

5. Mail fraud is included among the predicate acts which may constitute racketeering under 18 U.S.C. § 1961 (1982).

For purposes of the analysis in this opinion, we discard the claim of mail fraud based on sending false reports to the Immigration and Naturalization Service ("INS") as non-viable. A plaintiff in a civil RICO action, when relying on the predicate acts of mail fraud, must show proof of loss of tangible property resulting from the defendant's conduct. *See McNally v. U.S.,*

## II. DISCUSSION

■ Count II need not detain us long. The district court dismissed Count II—the RICO conspiracy count—because the allegations of a conspiracy were merely conclusory and unsupported by any factual allegations. *Sooner Products Co. v. McBride,* 708 F.2d 510, 512 (10th Cir.1983); *Barger v. State of Kansas,* 620 F.Supp. 1432 (D.Kan.1985). We find that dismissal to be proper. The plaintiffs' complaint and RICO Case Statement allege at most that some of the defendants knew about O'Neill's activities; there are no facts alleged that would indicate that they were willing participants in a conspiracy. *United States v. Boldin,* 772 F.2d 719, 727 (11th Cir.1985), *modified on other grounds,* 779 F.2d 618 (11th Cir.), *cert. denied,* 475 U.S. 1048, 106 S.Ct. 1269, 1498, 1520, 89 L.Ed.2d 577 (1986); *United States v. Pepe,* 747 F.2d 632, 659 (11th Cir.1984); *United States v. Alonso,* 740 F.2d 862 (11th Cir.1984). Thus, there is no palpable conspiracy claim.

■ Count I alleges that O'Neill engaged in a pattern of mail fraud, and that when the plaintiffs refused to participate in or conceal the scheme, they were fired. Two sections of the amended complaint focus on the predicate acts and the injury alleged. They read as follows:

17. In furtherance of the scheme described in the preceding paragraph, Father O'Neill has during the past six years engaged in a pattern of mail fraud in violation of 18 U.S.C. § 1341, including without limitation the following:

(a) Father O'Neill has permitted students who are not citizens of the United States to attend St. Thomas University and/or Monsignor Edward Pace High School, which is operated by St. Thomas University, without having student visas as required by federal law, and has knowingly caused false reports concealing said facts to be delivered by the United States Postal Service to the federal government.

(b) Father O'Neill has knowingly caused false reports regarding federal grants requiring "matching funds" to be delivered by the United States Postal Service to the federal government without properly accounting for any such matching funds.

(c) Father O'Neill has knowingly caused reports to be delivered by the United States Postal Service to the federal government to obtain financial aid funds from the federal government to be held in escrow and delivered to students as required by federal law with the fraudulent intent to use said funds for other obligations of St. Thomas University.

(d) Father O'Neill has knowingly caused false financial reports to be delivered by the United States Postal Service to creditors and Trustees of St. Thomas University.

．　　．　　．　　．　　．

46. Plaintiffs, Father O'Malley and Nesbitt, were terminated as a direct result of the wrongful acts alleged in paragraph 17, and would not have been terminated but for the fact that they refused to participate in or continue to conceal those wrongful acts. Plaintiff[s] therefore have been injured in their business and property by the foregoing violations of 18 U.S.C. § 1962(c) and are therefore entitled to treble damages, attorneys' fees, and costs pursuant to 18 U.S.C. § 1964.

The district court dismissed the complaint for failure to state a claim, concluding, among other things, that the plaintiffs lacked standing to assert a RICO claim. The plaintiffs argue on appeal: (1) that they have standing to assert a RICO claim; and (2) that the district court improperly dismissed their claim because of their failure to "prove" their case in their RICO

---

483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). The plaintiffs have not alleged that the government was deprived of any money or property by being sent false immigration reports. *United States v. Gimbel,* 830 F.2d 621

(7th Cir.1987). Thus, because the alleged scheme of mailing false reports to the INS was directed at depriving the government of merely intangible rights, plaintiffs do not present a cognizable claim of mail fraud.

Case Statement. We affirm the district court's dismissal for lack of standing, and therefore need not address plaintiffs' second argument.

The statute at issue, 18 U.S.C. § 1964(c) (1982), reads as follows:

Any person *injured in his business or property by reason of a violation of section 1962* of this chapter may sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee (emphasis added).

Thus, in order to have standing to sue for damages under section 1964(c) the plaintiffs must show: (1) a violation of section 1962; (2) injury to business or property; and (3) that the violation caused the injury. *See Haroco v. American Bank and Trust Co.*, 747 F.2d 384, 398 (7th Cir.1984), *aff'd*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). We assume that discharge from employment constitutes an injury to "business or property." *Nodine v. Textron, Inc.*, 819 F.2d 347, 348 (1st Cir.1987). We also assume that the complaint sufficiently alleges predicate acts of mail fraud, and focus our attention on the issues of standing and causation.

Section 1964(c) itself provides little guidance as to the precise meaning of the words "by reason of." However, the Supreme Court, in *Sedima, S.P.R.L. v. Imrex Co. Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), discussed this requirement. The *Sedima* Court concluded that "the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." 473 U.S. at 496, 105 S.Ct. at 3285. In other words, "the compensable injury necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern ... Any recoverable damages occurring by reason of a violation of § 1962(c) will flow from the commission of the predicate acts." 473 U.S. at 497, 105 S.Ct. at 3285. The

language "by reason of" in section 1964(c) imposes a proximate causation requirement on the plaintiffs. *Cullom v. Hibernia Nat'l. Bank*, 859 F.2d 1211, 1214 (5th Cir. 1988); *Morast v. Lance*, 807 F.2d 926, 933 (11th Cir.1987); *Haroco v. American Bank and Trust*, 747 F.2d at 398; *Sperber v. Boesky*, 849 F.2d 60, 63 (2d Cir.1988); *Cenco v. Seidman & Seidman*, 686 F.2d 449, 457 (7th Cir.), *cert. denied*, 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982).[6]

The plaintiffs allege only predicate acts of mail fraud. Therefore, in order to establish standing, the plaintiffs must show that the defendants' mailing of false reports and statements directly caused them to lose their jobs. The plaintiffs have not established that causal nexus. Neither in their complaint nor in their RICO Case Statement do plaintiffs demonstrate that they were injured by the alleged acts of mail fraud. Instead, they allege that their injury arose as a result of their refusal to participate in or to conceal the fraudulent scheme. Therefore, by their own allegations, the proximate cause of the plaintiffs' injuries was O'Neill's decision to fire them for refusing to participate in or to conceal the scheme—not the mail fraud scheme itself. *See Burdick v. American Express Co.*, 865 F.2d 527, 529 (2d Cir.1989); *see also Nodine*, 819 F.2d at 349. *But see Callan v. State Chemical Mfg. Co.*, 584 F.Supp. 619, 623 (E.D.Pa.1984).

It may well be true that the commission of the predicate acts constituted the "but for" cause of the firings. However, that tenuous a relation between the harm and the predicate acts is not sufficient to confer standing. *Morast*, 807 F.2d at 933; *Sperber*, 849 F.2d at 63. RICO does not provide a remedy for every injury that may be traced to a predicate act.

Plaintiffs argue that our recent decision in *Morast v. Lance*, 807 F.2d 926 (11th Cir.1987), holds that persons discharged for refusing to participate in a scheme of mail fraud have standing to sue under section

---

**6.** Some courts have held that indirect injury is sufficient to confer standing. *Terre du Lac Ass'n., Inc. v. Terre du Lac, Inc.*, 772 F.2d 467, 473 (8th Cir.1985), *cert. denied*, 475 U.S. 1082, 106 S.Ct. 1460 & 1461, 89 L.Ed.2d 718 (1986); *Komm v. McFliker*, 662 F.Supp. 924, 928 (W.D. Mo.1987).

1964(c). In that case, Morast, an employee of a bank, learned that a director of the bank was committing banking law violations. Morast reported the violations to the Comptroller of the Currency and cooperated in a subsequent investigation. After he was terminated, Morast sued the bank claiming that he was discharged because of a conspiracy in violation of 18 U.S.C. § 1964 and "that the only way defendants could continue their illegal scheme was to rid the bank of those people who would not 'go along' with the plan." *Id.* at 933. This court, in affirming the district court's dismissal of his RICO claim, said:

> Morast was not fired because he refused to participate in the bank's illegal scheme; therefore, Morast's injury, his discharge, did not flow directly from the predicate acts, the defendants' banking violations.

*Morast,* in a footnote, noted that *Callan v. State Chemical Mfg. Co.,* 584 F.Supp. 619 (E.D.Pa.1984) was "inapposite because the plaintiffs in *Callan,* unlike Morast, were fired because they refused to participate in the illegal company policy." 807 F.2d at 933 n. 8. The *Morast* court did not have before it the issue we now address. We hold that there is no principled difference between a discharge for refusal to participate in the predicate acts alleged and a retaliatory discharge for reporting such illegal activity. In either case the injury does not flow directly from the predicate acts.

Our conclusion that plaintiffs' injuries do not flow from the acts of mail fraud is supported by other authority which we consider persuasive. In *Cullom v. Hibernia Nat'l. Bank,* 859 F.2d 1211 (5th Cir.1988), the Fifth Circuit held that even when an employee is discharged for refusing to participate in a RICO mail fraud scheme, he is not injured "by reason of" the commission of the predicate acts, and consequently lacks standing to sue under section 1964(c). Cullom was a top official in Southwest National Bank of Lafayette ("SNB"), which

was engaging in merger talks with Hibernia National Bank ("Hibernia"). By virtue of his position, Cullom discovered a fraudulent scheme whereby Hibernia and associated banks would sell and attempt to sell to other banks short term loan participations. Hibernia would sell these loan participations immediately preceding the end of a reporting period and then buy them back immediately thereafter, thus distorting its financial statements. Hibernia attempted to sell loan participations to SNB. Cullom, concerned about the legality of the transaction, contacted SNB's legal counsel. SNB's legal counsel refused to render an opinion on the matter. Subsequently, when the deal neared completion, Cullom, still concerned about the legality of the transaction, contacted independent legal counsel. Cullom eventually refused to participate in the scheme. The transaction was ultimately abandoned, but SNB's legal counsel encouraged Cullom "not to make waves" about the forlorn deal. Shortly thereafter SNB demanded and received Cullom's resignation. Cullom then sued Hibernia and SNB alleging that Hibernia and SNB had engaged in or conspired to engage in several counts of mail and securities fraud in violation of RICO. Specifically, Cullom claimed that he was discharged for his refusal to participate in the scheme.[7] *Id.* at 1213.

The Fifth Circuit noted that Cullom did not allege that his injury flowed from the predicate acts of mail and securities fraud, but rather claimed he was discharged because he refused to participate in the illegal activity. *Id.* at 1213. The court concluded, therefore, that Cullom's injury resulted from SNB's decision to fire him after he refused to participate in the alleged scheme, not from the predicate acts. In short, Cullom failed to allege the proper causal nexus between his injury and the mail fraud. *Id.* at 1216.

Additionally, the *Cullom* court reasoned that Cullom was not the target or victim of the predicate acts of mail fraud. Cullom

---

7. When Cullom asked for the reason why SNB demanded his resignation, he was told that the decision was based on his refusal to cooperate in the purchase of the loan participations and for consulting independent counsel. *Id.* at 1213.

had alleged in his amended complaint that the victims of the loan participation scheme were the members of the general public who would rely on the inaccurate financial statements to make investment decisions about Hibernia. Because Cullom was not one of those people, he had no standing to sue under RICO.

We find the reasoning in *Cullom* persuasive. We also find the facts closely analogous to those in the instant case. Like Cullom, the plaintiffs here are high ranking officials who learned of an alleged scheme of mail fraud through execution of their duties. Further, just as the plaintiffs allegedly refused to participate in the fraudulent scheme and were told to conceal the operating deficit, so Cullom refused to participate in the loan participation scheme and was advised "not to make waves." Both argue that they were terminated for refusing to participate in a fraudulent scheme. We align ourselves with the *Cullom* court and hold that the plaintiffs here were fired by reason of O'Neill's decision to have them fired, not because of the commission of the predicate acts. Consequently, the causation requirement contained in section 1964(c) is not satisfied.

We also agree with the *Cullom* court and other courts that plaintiffs lack standing because they are not the victims or targets of the mail fraud. *See Burdick,* 865 F.2d at 529; *Pujol v. Shearson/Am. Express, Inc.,* 829 F.2d 1201, 1205 (1st Cir. 1987);[8] *Diamond v. Reynolds,* No. 84–280 1986 WL 15375 (D.Del. July 15, 1986) (LEX-IS, Genfed library, Dist. file), *aff'd in part* and *rev'd in part* and *remanded on other*

grounds, 853 F.2d 917 (3rd Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 392, 102 L.Ed.2d 381 (1988). We are not unmindful of contrary authority. *Terre du Lac Ass'n., Inc. v. Terre du Lac, Inc.,* 772 F.2d 467, 472–3 (8th Cir.1985); *Alexander Grant and Co. v. Tiffany Industries, Inc.,* 742 F.2d 408, 411 nn. 7 & 8 (8th Cir.1984), *vacated and remanded for reconsideration in light of Sedima,* 473 U.S. 922, 105 S.Ct. 3551, 87 L.Ed.2d 673 (1985), *on remand,* 770 F.2d 717 (8th Cir.1985) (adhering to original result), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 799, 88 L.Ed.2d 776 (1986). Plaintiffs do not allege that they, in any way, relied upon the false reports sent to the government or upon the distorted financial statements. *See Blount Financial Services, Inc. v. Walter E. Heller and Co.,* 819 F.2d 151 (6th Cir.1987).[9] The victims of the mail fraud, if there were any, were the federal government and the creditors of St. Thomas and the American Bar Association.[10] Indeed, in their RICO Case Statement, plaintiffs allege that the parties defrauded by the defendants' fraudulent scheme are the government, St. Thomas' creditors, the students and the American Bar Association. Nowhere do the plaintiffs allege that they were the intended victims of the mail fraud scheme. Their injury, therefore, results not "by reason of" the RICO violation, but rather from the tangentially related decision to fire them.

### III. CONCLUSION

Because we agree with the district court's conclusion that Count II does not

---

**8.** *Pujol* involved a vice-president with Shearson who was terminated for refusing to participate in an alleged scheme of mail fraud. Pujol's complaint alleged that Shearson and its agents violated the law by engaging in illegal banking transactions, defrauding investors and furthering the execution of the scheme through the use of the mail and wires. The court found, however, that his injury arose from the actions he took to stop that illegal scheme as opposed to injury from the predicate acts.

The court in *Pujol* also reasoned that because Pujol was not a target of any of the acts pleaded as predicate acts in the RICO claim, he lacked standing to sue under civil RICO. In other words, Pujol, like the plaintiffs here, was not a person at which the predicate act was directed.

**9.** In *Blount,* the Sixth Circuit held that in order to properly allege a civil RICO claim for mail fraud, the plaintiff must state with particularity not only the false statement of fact made by the defendant, but also that he *relied* upon such false statement of fact. 819 F.2d at 152.

**10.** During the period out of which this case arises, St. Thomas was attempting to establish a law school. In order to receive accreditation, St. Thomas had to subject its financial records to scrutiny by the American Bar Association. Plaintiffs contend that the defendants mailed distorted financial statements to the American Bar Association, and that the Association relied upon them.

sufficiently allege a RICO conspiracy claim and the district court's conclusion that Count I does not demonstrate that the plaintiffs have standing to assert a substantive RICO claim, the judgment is

AFFIRMED.

ANDERSON, Circuit Judge, concurring specially:

As indicated by the majority in this case, *Morast v. Lance*, 807 F.2d 926 (11th Cir.), held that the discharge of an employee in retaliation for reporting activity which is illegal under RICO (18 U.S.C. § 1964) does not flow directly from the RICO violation, and thus the discharged employee cannot maintain a civil RICO action. I agree with the majority that there is no principled distinction between that and the instant claim that plaintiffs were discharged for refusing to participate in the illegal acts. Because I doubt that *Morast* and the result in this case are faithful to *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 & n. 15, 105 S.Ct. 3275, 3285 & n. 15, 87 L.Ed.2d 346 (1985), I concur in the result only.