Jackie WILLIAMS, Plaintiff,

v.

Elijah WALDRON, June Waldron, Kameron Waldron, Katrina Waldron Brantley, Kyle Waldron, Pioneer Housing Systems, Defendants.

Civil Action No. 1:97–CV–1660RWS.

United States District Court,
N.D. Georgia,
Atlanta Division.

July 21, 1998.

Edward T.M. Garland, Garland, Samuel & Loeb, Atlanta, GA, Ronald C. Williams, Charlotte, NC, for plaintiff.

Hubert Chapman Lovein, Jr., Jones, Cork & Miller, Macon, GA, for defendants.

### MEMORANDUM OPINION AND ORDER

STORY, District Judge.

This is an action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiff also alleged claims for violations of the Georgia Racketeer and Influenced Corrupt Organizations Act ("Georgia RICO"), O.C.G.A. § 16–14–1, et seq., fraud, breach of contract, quantum meruit, and false imprisonment. This case is before the Court on Defendants' Motion to Dismiss for Failure to State a Claim [4–1], Defendants' Motion for Dismissal, Stay or Abstention [5–1], Defendants' Motion for Leave to File Supplemental Memo [21–1], and Plaintiff's Motion for Leave to File Response to Defendants' Supplemental Memo [22–1]. Plaintiff and Defendants attached their supplemental memoranda to their motions. The Court grants Defendants' motion to file supplemental memorandum and deems Defendants' Memorandum filed on February 27, 1998. The Court also grants Plaintiff's motion to file supplemental memorandum and deems Plaintiff's memorandum filed on March 5, 1998.

### I. FACTUAL BACKGROUND

Defendant Elijah Waldron (hereinafter referred to as "Waldron") served as CEO of Ocilla Industries, Inc., a now defunct Georgia corporation which produced and sold mobile homes. From late 1982 until March 1986, Plaintiff was head of design and marketing for Ocilla. Generally, Plaintiff alleged Defendant Waldron committed numerous acts of mail fraud in violation of 18 U.S.C. § 1341, numerous acts of wire fraud in violation of 18 U.S.C. § 1343, numerous acts of financial institution fraud in violation of 18 U.S.C. § 1344, and money laundering in violation of 18 U.S.C. § 1956. Specifically, Plaintiff alleged Elijah Waldrons' racketeering activities included maintaining fraudulent financial records, reporting fraudulent financial data to shareholders and creditors by the U.S. mails and interstate wire, submitting fraudulent financial statements to financial institutions, and money laundering to cover up various acts of theft.

Plaintiff alleged Waldron used part of the money stolen from Ocilla to purchase two First State Bank money orders payable to Plaintiff. One money order was dated March 6, 1985 and the other, May 8, 1985. Plaintiff further alleged that Waldron forged Plaintiff's signature on each money order and took the money for his personal use.

As to the other defendants, Plaintiff alleged they participated in the creation of Pioneer Housing Systems, "a front for their racketeering activities." Pioneer is a New York corporation with its principal place of business in Georgia. Plaintiff alleged Defendants fraudulently obtained wholesale mobile home financing from ITT Commercial Finance Corporation by the submission of a fraudulent financial statement which overstated Pioneer's financial condition. Plaintiff alleged it was Waldron's and Pioneer's fraud-

ulent financing statements and the obtaining of financing through the use of these statements that induced Plaintiff to agree to design and market houses for Pioneer. Plaintiff received Pioneer's April 30, 1992 financial statement by mail shortly after April 30, 1992. Plaintiff received Waldron's May 1, 1992 personal financial statement during May or early June.

On June 15, 1992, Plaintiff and Defendant Waldron, personally and as a representative of Pioneer, executed an employment contract. Two conditions precedent to the contract were 1) settlement of an outstanding fraud claim against Ocilla, and 2) obtaining wholesale mobile home financing. Both conditions were met. The parties agreed that Plaintiff would be compensated $500 per house less marketing expenses plus an option to purchase half of the outstanding Pioneer stock.

Plaintiff alleged Defendants engaged in wrongdoing in the performance of the contract. The Complaint states that Defendants wrongfully converted "all the consideration promised." Plaintiff alleged Defendants provided him with interstate telephone lines in Pioneer's name and mail services at Pioneer's office and advanced the cost of these services to Plaintiff but then deducted the costs as marketing expenses when calculating Plaintiff's net commissions.

Plaintiff alleged there was one condition precedent to Plaintiff's ability to exercise the option to purchase under the contract. If Pioneer generated enough cash for Defendants to recover their investment, Plaintiff could then purchase the stock. On February 2, 1993, Plaintiff and Pioneer executed an agreement acknowledging fulfillment of this condition. Plaintiff alleged that upon acknowledgment of the fulfillment of the condition, title to the stock passed to Plaintiff although it was never issued.

With respect to Plaintiff's other compensation, Pioneer paid Plaintiff commissions owed under the contract up until February 28, 1993. Thereafter, Defendants, with Plaintiff's consent, accrued Plaintiff's net commissions at least until June 30, 1993. Plaintiff alleged Defendants' misappropriation of large sums of money to themselves effectively denied Plaintiff compensation due to him.

The Complaint states that all payments received by Defendants "foreseeably caused and were furthered by uses of the United States mails and/or interstate wire communication facilities." Plaintiff alleged all false and fraudulent diversions of corporate funds "foreseeably caused further uses of the United States mails and communication facilities" for the transmission of false and misleading financial documents and statements. Plaintiff ended his employment with Defendants when Defendants had Plaintiff forcibly removed from the Pioneer office.

## II. PROCEDURAL HISTORY

On August 13, 1993, Plaintiff filed a lawsuit against Defendants in the Superior Court of Ben Hill County, Georgia based on the same subject matter. That action contains claims for violations of the Georgia RICO Act, fraud, breach of contract, false arrest, false imprisonment and intentional infliction of emotional distress. Defendants filed an answer and counterclaim in the state court action. On or about February 9, 1994, Plaintiff added claims for violations of 18 U.S.C. § 1344 (bank fraud), 18 U.S.C. § 1957 (money laundering), 63 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), and various violations of the federal securities laws. On or about February 5, 1997, Plaintiff filed another amendment to his state court complaint which included a claim for federal RICO violations.

On June 9, 1997, Plaintiff filed the present action. One day later, Plaintiff restated his state court federal RICO claims in an amendment filed on June 10, 1997. Less than two months later, Plaintiff filed a voluntary dismissal without prejudice of his state court action. Defendants filed an objection to Plaintiff's dismissal. Plaintiff contends this dismissal renders moot Defendants' Motion for Dismissal, Stay or Abstention. However, the Superior Court of Ben Hill County sustained Defendants' objection and vacated Plaintiff's dismissal. On December 12, 1997, Plaintiff filed a notice of appeal regarding the state court's order vacating Plaintiff's dismissal.

In the present action, Plaintiff requests judgment jointly and severally against De-

fendants for actual and punitive damages, interests and costs, including attorney's fees.

## III. LEGAL ANALYSIS

### A. Defendants' Motion to Dismiss for Failure to State a Claim

Defendants contend Plaintiff failed to state a claim upon which relief may be granted with respect to his claims for RICO violations. Defendants urge this Court to dismiss Plaintiff's RICO claims and Plaintiff's pendent state law claims. A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts to support his claim for relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In ruling on a motion to dismiss, the district court must construe all averments in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

■ Defendants argue Plaintiff failed to allege an injury cognizable under RICO and, therefore, lacks standing to bring these claims. Section 1964(c) of Title 18 of the United States Code permits any person injured in his business or property by reason of a violation of 18 U.S.C. § 1962 to sue for the recovery of damages sustained. Section 1962 prohibits the use or investment of income derived from a pattern of racketeering activity, the acquisition or maintenance of an enterprise through a pattern of racketeering activity, and conducting or participating in the affairs of an enterprise through a pattern of racketeering activity. 18 U.S.C. § 1962(a)–(c). This section also prohibits aiding, abetting or conspiring to violate any of the aforementioned provisions. Racketeering activity includes, among other indictable offenses, mail fraud, wire fraud, and financial institution fraud. 18 U.S.C. § 1961(1)(B). Such offenses may serve as predicate acts for violations under § 1962. To recover on a civil RICO claim, the plaintiff must prove that § 1962 was violated, that the plaintiff was injured in his business or property, and that the violation of § 1962 caused the plaintiff's injury. *Cox v. Administrator U.S. Steel & Carnegie,* 17 F.3d 1386, 1396 (11th Cir.1994).

Plaintiff alleged Defendants committed prohibited acts described in 18 U.S.C. § 1962(a). Plaintiff alleged Defendants receive and continue to receive Plaintiff's income from the enterprise and Defendants invested and used a portion of Plaintiff's income in the operation of the enterprise and to further establish the enterprise." See Complaint, ¶ 101. Plaintiff alleged Defendants violated 18 U.S.C. § 1962(b) by fraudulently appropriating and maintaining Plaintiff's 50% Pioneer stock interest and maintaining control of Pioneer as a means of depriving Plaintiff of his property. See Complaint, ¶ 102. Plaintiff further alleged violations of 18 U.S.C. § 1962(c) and (d) by Defendants being employed by and/or associated with the enterprise by direct employment and/or receipt of money generated from a pattern of racketeering activity. Plaintiff alleged Defendants past acts of aiding, abetting and conspiring to commit violations of 18 U.S.C. § 1962(a),(b), and (c) constituted violations of 18 U.S.C. § 1962(d). Complaint, ¶¶ 103 and 104.

As to the continuing nature of Defendants conduct, Plaintiff alleged that he believes additional racketeering activity has been perpetrated and continues to be perpetrated and that "acts of racketeering activity continue to occur in the northern District of Georgia and elsewhere." Complaint, ¶¶ 105 and 107.

### 1. Causation

Assuming Plaintiff's allegations regarding the violations of § 1962 are true, Defendants contend Plaintiff's RICO claims should be dismissed on the grounds that Plaintiff failed to demonstrate that Defendants' racketeering activity caused Plaintiff's injury. In *Morast v. Lance,* 807 F.2d 926, 933 (11th Cir.1987), the Eleventh Circuit affirmed the dismissal of the plaintiff's RICO claims, holding that the plaintiff's injury — termination of employment— "did not flow directly from the predicate acts" of the defendants' banking violations. (citing *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). The court in *Morast* noted that the plaintiff sought to use RICO as a source of recovery for the loss of his job.

Similarly, in *O'Malley v. O'Neill,* 887 F.2d 1557 (11th Cir.1989), the Eleventh Circuit affirmed the dismissal of the plaintiffs' RICO claims, holding that the plaintiffs failed to establish a causal nexus between their terminations and the defendants' mail fraud. The plaintiffs in *O'Malley* were also discharged from their employment; however, their terminations were the result of their refusal to participate in racketeering activity rather than as a result of a RICO violation. *Id.* at 1561. The court in *O'Malley* noted that although there may have been "but for" causation, "RICO does not provide a remedy for every injury that may be traced to a predicate act."[1] *Id.* The court held that the plaintiffs were not the targets or victims of the defendants' mail fraud.

To clarify any confusion regarding the injury and causation requirements necessary to maintain a private cause of action under RICO, the Eleventh Circuit in *Pelletier v. Zweifel,* 921 F.2d 1465, 1499 (11th Cir.1991) held, "Section 1964(c), as interpreted by the Supreme Court and lower courts,[ ] imposes a proximate cause requirement: the plaintiff's injury must have been proximately caused by the commission of the predicate acts." "When the alleged predicate act is mail or wire fraud, the plaintiff must have been a target of the scheme to defraud and must have relied to his detriment on misrepresentations made in furtherance of that scheme." *Pelletier,* 921 F.2d at 1499–1500. The Supreme Court later reiterated the holding of *Pelletier* in *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 265–264, 268, 112 S.Ct. 1311, 1316–1317,1318, 117 L.Ed.2d 532, 117 L.Ed.2d 532 (1992). In *Holmes,* the Supreme Court acknowledged that Section 1964(c) may be read to require only "but-for" causation; however, the Court held RICO should not get such an expansive reading. *See also Bivens Gardens Office Bldg. Inc., v. Barnett Banks of Florida, Inc.,* 140 F.3d 898, 906 (11th Cir.1998).

Defendants correctly assert that Plaintiff failed to demonstrate that he suffered any harm proximately caused by predicate acts. As to Plaintiff's claims that Waldron forged money orders made out to Plaintiff, Plaintiff failed to allege that he had a property right to the funds. Without alleging that he was, at that time, entitled to the funds, Plaintiff suffered no harm as result of the alleged forgeries. *See e.g., M.R. Taffet v. Southern Co., et al.,* 967 F.2d 1483 (11th Cir.1992) (where plaintiffs/customers had no right to be charged a lower rate for utilities, plaintiffs suffered no legally cognizable injury under RICO for the alleged fraudulent misstatements made by utilities company in obtaining an unreasonably high rate).

Other predicate acts alleged by Plaintiff include reporting fraudulent financial data to shareholders and creditors by mail and wire, submitting fraudulent financial statements to financial institutions, and money laundering. Although Defendants may have provided Plaintiff fraudulent financial statements through the U.S. mails, Plaintiff's injury[2]—the failure to receive compensation under his employment contract—did not flow directly from this predicate act. An act or omission is a proximate cause "if it is a substantial factor in the sequence of responsible causation." *Cox,* 17 F.3d at 1399. Defendants alleged offenses of mail fraud and wire fraud were not substantial factors in the sequence of responsible causation resulting in Plaintiff's injuries. Although Plaintiff may have relied to his detriment on misrepresentations made in furtherance of Defendants' scheme, Plaintiff was not a target of the scheme. *See Pelletier,* 921 F.2d at 1499—1500. Defendants alleged offenses enabled them to obtain funds necessary to carry on their schemes; however, neither offense necessarily enabled them to defraud Plaintiff.

Plaintiff alleged Defendants failed to give him commissions due under his contract

---

1. The compensable injury is the harm caused by the predicate acts. *See Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 497, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985).

2. In response to Defendants' motion, Plaintiff described his injuries or damages as resulting

from Defendants' fraudulent conversion of his 50% of the outstanding Pioneer stock, conversion of the stock's subchapter S income which passed through to Plaintiff as it was earned, and conversion of Plaintiff's commissions.

and refused to issue stock as a part of his compensation. However, these acts do not constitute predicate acts under the statute. *See* 18 U.S.C. § 1961. Although Defendants may be guilty of theft, such an offense does not give this Court jurisdiction under RICO. Plaintiff also argues the harm he sustained was reasonably foreseeable; however, the test for standing under RICO is not whether the harm was reasonably foreseeable, but whether the alleged injury was directly caused by the RICO violation. *See Bivens*, 140 F.3d at 908. Assuming the Defendants committed the alleged offenses, there is no indication that they could not have compensated Plaintiff according to the terms of their agreements. Plaintiff, like the plaintiff in *Morast*, seeks to use RICO as a source of recovery of his lost compensation under the employment contract. Because Plaintiff failed to demonstrate that his injuries were proximately caused by the alleged predicate acts, Plaintiff's RICO claims must be dismissed.

### 2. Pattern of Racketeering Activity

■ Defendants also contend Plaintiff failed to sufficiently allege the pattern element of a RICO action. According to 18 U.S.C. § 1961(5), a pattern of racketeering activity requires at least two acts of racketeering activity, the last of which occurred within ten years after the commission of a prior act of racketeering activity. However, two predicate acts, standing alone, may not be sufficient to establish a pattern of racketeering activity. *Sedima*, 473 U.S. at 496, n. 14, 105 S.Ct. at 3285, n. 14. "[T]o prove a pattern of racketeering activity a plaintiff [ ] must show that the racketeering predicates are related and that they amount to or pose a threat of continued criminal activity". *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492

U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989).

■ Defendants alleged acts of mail fraud, wire fraud and financial institution fraud are related in that they have the same or similar purposes, results, and victims. *See H.J., Inc.*, 492 U.S. at 240, 109 S.Ct. 2893. Defendants transmission of fraudulent financial statements to financial institutions, creditors, and shareholders resulted in Defendants' obtaining financing and capital to establish Pioneer and maintain its operations.[3] Defendants predicate acts were also continuous.[4] These acts were committed during the period of August 19, 1991 through approximately September of 1992. Although the various acts of fraud do not by their nature suggest a threat of future racketeering activity or activity of a repetitive nature, the past predicate acts do represent a series of related acts over a substantial period of time. Defendants repeated transmission of fraudulent financial statements during a one-year period of time satisfies the continuity requirement. *See Cox*, 17 F.3d at 1398 (racketeering activity during 1983 and throughout 1984 was sufficiently long for a reasonable jury to conclude that the plaintiff's established closed-ended continuity); *cf. Aldridge v. Lily-Tulip Inc. Salary Retirement Plan Benefits Committee*, 953 F.2d 587, 593 (11th Cir.1992) (six-months period too short to established closed-ended continuity), *Water Intn'l Network USA Inc., v. East*, 892 F.Supp. 1477, 1482 (M.D.Fla.1995) (22–month period satisfied continuity requirement), *Colonial Penn Ins. Co. v. Value Rent–A–Car Inc.*, 814 F.Supp. 1084, 1094 (S.D.Fla.1992) (two-year period constituted "substantial period of time" and established required continuity). Therefore, Plaintiff sufficiently alleged a pattern of racketeering activity, and the Court

---

**3.** Plaintiff failed to alleged specific predicate acts surrounding Defendant Waldron's employment with Ocilla. Plaintiff merely alleged that Defendants theft, money laundering and misappropriation "foreseeably involved mail and wire transmissions of fraudulent financial information and documents to financial institutions, the SEC, shareholders, brokers, suppliers, creditors, and others." Because Plaintiff failed to plead allegations of fraud with sufficient particularity, the Court will only consider Plaintiff's fraud allega-

tions surrounding Defendants' conduct as principals of Pioneer. *See* Fed.R.Civ.P. 9(b).

**4.** Continuity encompasses both a closed-ended and open-ended concept. *See H.J., Inc.*, 492 U.S. at 241, 109 S.Ct. at 2902. Closed-ended continuity may be demonstrated by proving a series of related predicate acts over a substantial period of time. Open-ended continuity may be established by proving that the predicate acts establish a threat of long-term racketeering activity. *Id.*

will not dismiss Plaintiff's RICO claims on these grounds.

### 3. Pendent State Law Claims

■ Defendants argue Plaintiff's remaining state law claims should also be dismissed because there is no longer a basis for federal court jurisdiction. Pursuant to 28 U.S.C. § 1367(a), "[I]n any action in which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action that they form part of the same case or controversy under Article III of the United States Constitution." For a federal court to exercise pendent jurisdiction over state law claims, the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a common nucleus of operative fact. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). However, a district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). In such cases, "*Gibbs* strongly encourages or even requires dismissal of the state claims." *L.A. Draper & Son v. Wheelabrator–Frye, Inc.*, 735 F.2d 414, 428 (11th Cir.1984).

■ In determining whether to entertain pendent state claims, the district court should consider four factors:

(1) whether the state law claims predominate in terms of proof, the scope of the issues raised, or the comprehensiveness of the remedy sought, (2) whether comity considerations warrant determination by a state court (i.e. is the state claim novel or particularly complex such that an accurate definitive interpretation of state law is necessary); (3) whether judicial economy, convenience, and fairness to the litigants would best be served by trying the federal and state claims together; and (4) whether the state claim is so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particularly strong.

*Id.* at 428. With the dismissal of Plaintiff's federal RICO claims, Plaintiff's state claims clearly predominate. Also, the interest of judicial economy and convenience do not support retaining jurisdiction in light of the four-year long proceedings in a state court which lies in another federal district. There appears to be an absence of novel or complex state law issues which might warrant dismissal of the pendent claims, yet Plaintiff's state law claims are not closely tied to questions of federal policy.

■ One additional factor the district court must consider is the expiration of the state statute of limitations. *Ransom v. S. & S. Food Ctr., Inc.*, 700 F.2d 670, 678 (11th Cir.1983). "A federal court may retain pendent jurisdiction over a state claim which is barred by the state period of limitations, even though all federal claims have been dismissed." *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir.1982); *Nelson v. Greater Gadsden Housing Authority*, 802 F.2d 405 (11th Cir.1986). Plaintiff failed to address the disposition of his pendent claims and focused on the issue of the sufficiency of the complaint. Because dismissal of Plaintiff's state law claims if barred by the statute of limitations may be an abuse of discretion, the Court will dismiss Plaintiff's state claims without prejudice affording Plaintiff the opportunity to move for reconsideration on the issue of the availability of a state court forum. *See L.A. Draper*, 735 F.2d at 428; *Roper v. Edwards*, 815 F.2d 1474, 1478 (11th Cir.1987).

### B. Defendants' Motion for Dismissal, Stay or Abstention

■ Defendants contend Plaintiff's complaint should be dismissed based on the abstention doctrine of *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Id.* at 813, 96 S.Ct. 1236. Abstention may be appropriate when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Id.* at 814, 96 S.Ct. 1236. Abstention may also be appropriate when there is present parallel state court litigation. *Moses H. Cone Memorial Hosp. v. Mercury Const.,*

460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). In the case at bar, determining whether abstention is appropriate on the basis of pending parallel state court litigation would require this Court to resolve state law issues surrounding the validity of Plaintiff's dismissal of his state court action. The Court is unwilling to make such a determination in order to decide the propriety of abstention. Furthermore, the Court's ruling on Defendants' Motion to Dismiss for Failure to State a Claim renders Defendants' Motion for Dismissal, Stay or Abstention moot.

### IV. ORDER

Defendant's Motion to Dismiss [4–1] is **GRANTED as to Plaintiff's federal RICO claims.** The Court also dismisses Plaintiff's state claims without prejudice and grants Plaintiff leave to file a motion for reconsideration on the issue of the availability of a state court forum within 30 days of the docketing of this Order. Defendants are permitted to file a response within 10 days of service of Plaintiff's motion.

Defendants' Motion for Dismissal, Stay or Abstention [5–1] is **DENIED as moot.** Defendants' Motion to File Supplemental Memorandum [21–1] is **GRANTED.** Plaintiff's Motion to File Supplemental Memorandum is **GRANTED [22–1].**